HEADWATERS INC., an Oregon non-profit corporation; Forest Conservation Council, Plaintiffs–Appellants,

v.

U.S. FOREST SERVICE,
Defendant–Appellee.

No. 01–35898.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 2003.

Filed Sept. 8, 2004.

Lori J. Cooper, Williams, OR, for the appellants.

Todd S. Aagaard, Attorney, United States Department of Justice, Washington, D.C., for the appellees.

Before: GOODWIN, HUG, and BERZON, Circuit Judges.

Opinion by Judge HUG; Dissent by Judge BERZON.

HUG, Circuit Judge:

This case presents a problem peculiar to public law cases. The plaintiffs in this case are suing to vindicate a public right that has already been litigated by other environmental groups. The plaintiffs contest the validity of sales of timber made by the Forest Service. Those particular sales, however, have already been challenged by other environmental groups using the same arguments that the plaintiffs now present. We agree with the district court that the current plaintiff's interests were virtually represented by the previous groups, so we affirm the district court's dismissal of the case on res judicata grounds.

Headwaters, Inc. and the Forest Conservation Council (collectively "Headwaters") filed suit against the United States Forest Service seeking declaratory and injunctive relief for alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370, the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–1687, and the Administrative Procedures Acts ("APA"), 5 U.S.C. §§ 701–706 in the Rogue River National Forest. The district court dismissed the complaint as barred by *res judicata*. *Headwaters v. United States Forest Service*, 159 F.Supp.2d 1253, 1258 (D.Or.2001). We have jurisdiction based upon 28 U.S.C. § 1291, and affirm.

## I. Background

On May 13, 1999, six environmental groups and two individuals [1] (*"American Lands* litigants") filed suit against the Forest Service challenging various timber sales, including the Beaver–Newt and Silver Fork Timber Sales. *American Lands*

---

1. The named plaintiffs included: American Lands Alliance, League of Wilderness Defenders, Oregon Wildlife Federation, Santiam Watershed Guardians, Friends of Breitenbush Cascades, Klamath–Siskiyou Wildlands Center, Gregory J. Dyson, and John Rancher.

**1028**

*ZAlliance v. Williams*, No. 99–697–AA (D.Or.1999). The complaint alleged that the Forest Service's approval of the sales violated NEPA, NFMA, and the APA. Both the Beaver–Newt and Silver Fork areas are located within the Rogue River National Forest in southwestern Oregon.

On December 13, 1999, pursuant to a settlement agreement, the *American Lands* litigants signed a stipulation of dismissal of the amended complaint with prejudice. On January 19, 2000, District Judge Ann Aiken entered judgment dismissing the action with prejudice.

On February 21, 2001, the Klamath–Siskiyou Wildlands Center ("Klamath–Siskiyou") filed suit against the Forest Service alleging that the approval of the Beaver–Newt and Silver Fork Timber Sales violated NEPA, NFMA, and the APA. *Klamath–Siskiyou Wildlands Center v. United States Forest Service*, No. 01–3018–HO (D.Or.2001). The Forest Service moved for judgment on the pleadings based upon *res judicata* because Klamath–Siskiyou had been a named plaintiff in the *American Lands* suit. In response, on June 1, 2001, Klamath–Siskiyou filed a motion for relief from the judgment which conceded that *res judicata* would bar the lawsuit, but argued that the court should grant relief from the *American Lands* judgment pursuant to Federal Rule of Civil Procedure 60(b). The Rule 60(b) motion was based upon the allegation that the attorney in the *American Lands* suit did not have authority to enter into the settlement agreement. On July 2, 2001, Judge Michael Hogan granted the Forest Service's motion for judgment on the pleadings and dismissed the action without prejudice. Klamath–Siskiyou did not appeal that judgment.

Three days later, on July 5, 2001, Headwaters filed the present suit against the Forest Service. Headwaters' complaint is virtually identical to the complaint filed by Klamath–Siskiyou, and Headwaters is represented by the same counsel that represented Klamath–Siskiyou in the prior litigation. The complaint again alleges violations of NEPA, NFMA, and the APA as a result of the Beaver–Newt and Silver Fork Timber Sales. On July 26, 2001, Judge Hogan *sua sponte* dismissed the new complaint with prejudice on *res judicata* grounds. *Headwaters*, 159 F.Supp.2d at 1258. Headwaters appeals.

**II. Standard of Review**

A district court's judgment based upon *res judicata* is a mixed question of law and fact in which legal issues predominate and is reviewed de novo. *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998); *United States v. Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir.1984). "[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." *Arizona v. California*, 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quotation marks and citation omitted). "This result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice [or thrice] defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* (citation omitted).

**III. Discussion**

"The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1997) (internal quotation marks omitted). "The application of this doctrine is central to the purpose for which civil

courts have been established, the conclusive resolution of disputes within their jurisdiction." *Id.* The preclusion doctrine encompasses a vindication of public rights by "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth.,* 69 F.3d 321, 330 (9th Cir. 1995).

■ The elements necessary to establish *res judicata* are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe–Sierra,* 322 F.3d at 1077 (quotation marks and citation omitted); *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997). We examine each of these elements in turn.

## A. Identity of Claims

■ In determining whether the present dispute contains an identity of claims with the prior litigation, the Ninth Circuit considers:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

---

2. Each of the six environmental groups in the *American Lands* litigation and the two environmental groups filing the Headwaters complaint pursued these three claims on behalf of the public to prevent the timber sales for violation of these laws. All of them expressed their standing to assert this public interest for essentially the same reason: the enjoyment of these forest areas by their members. This standing was expressed in somewhat different language, but all involved their particular use

*Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir.1982) (internal citations omitted).

■ Headwaters' suit clearly contains an identity of claims with the *American Lands* and the *Klamath–Siskiyou* suits. Headwaters' complaint alleges an infringement of the same right and arises out of the same nucleus of facts that were present in both the *American Lands* and *Klamath–Siskiyou* litigation. Headwaters' complaint challenges the timber sales on the grounds that the Forest Service is in violations of NEPA, NFMA, and the APA. All three of these claims were present in the prior suits.[2] Further, the Beaver–Newt and Silver Fork timber sales are the underlying "nucleus of facts" that forms the basis for all three of these suits. Finally, if this court were to rule on the claims that are presented it would have an effect on the prior judgment in the *American Lands* litigation.

Because the complaint alleges the same causes of action stemming from the same nucleus of facts, we hold that there exists an identity of claims.

## B. Final Judgment on the Merits

■ The dismissal of an action with prejudice constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action. *International Union of Operating Engineers v. Karr,* 994 F.2d 1426, 1429(9th Cir.1993); *see Lawrence v. Stein-*

---

of the forest that gave them standing to raise, on behalf of the public, the contention that these three laws had been violated.

The fact that Headwaters, Inc., and the Forest Conservation Council expressed the basis for their standing in slightly different ways did not give them separate claims, as Judge Berzon's dissent suggests. It only afforded each standing to assert a claim on behalf of the public.

*ford Holding B.V.* (*In re Dominelli* ), 820 F.2d 313, 316–17 (9th Cir.1987) (dismissal of action with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits and precludes parties from reasserting the same claims in a subsequent action).

The district court in *American Lands* entered a final judgment on the merits when it dismissed the action with prejudice pursuant to the stipulated dismissal. Based upon this stipulated dismissal, the court in *Klamath–Siskiyou* dismissed the case. We hold that because of the dismissal of the action with prejudice, there exists a final judgment on the merits.

## C. Privity

Privity is a flexible concept, dependent on the particular relationship between parties in each individual set of cases. *Tahoe–Sierra*, 322 F.3d at 1081–82. Federal courts have deemed several relationships "sufficiently close" to justify a finding of "privity" and, therefore, preclusion under the doctrine of *res judicata:*

"First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit." In addition, "privity" has been found where there is a "substantial identity" between the party and nonparty, where the nonparty "had a significant interest and participated in the prior action," and where the interests of the nonparty and party are "so closely aligned as to be virtually representative." Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by

which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues."

*Id.* at 1082 (quoting *In re Schimmels*, 127 F.3d at 881).

"Courts are no longer bound by rigid definitions of parties or their privies for the purposes of applying collateral estoppel or *res judicata.*" *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980). However, because non-party preclusion is "an exception to the deep-rooted historic tradition that everyone should have his own day in court, courts must ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion." *Tyus v. Schoemehl*, 93 F.3d 449, 454 (8th Cir.1996) (internal quotation marks and citations omitted).

"Privity between parties exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n. 3 (9th Cir.2002) (quoting *In re Schimmels*, 127 F.3d at 881). "Even when the parties are not identical, privity may exist if there is substantial identity between parties, that is, a sufficient commonality of interest." *Tahoe–Sierra*, 322 F.3d at 1081(internal quotation marks and citations omitted); *see In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983); *Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir.1995) (privity found when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action); *ITT Rayonier, Inc.*, 627 F.2d at 1003(privity may exist when interests are represented by one with authority to do so).

In this case, privity exists between Headwaters with the litigants in both the *Klamath–Siskiyou* and *American Lands* litigation. The stated interests of litigants are not simply "closely aligned;" they are the same. The relief sought is also identical. The parties have not sought recognition of any interest peculiar to themselves but rather a vindication of the public right to require Forest Service compliance with NEPA and NFMA. *See Richards v. Jefferson County,* 517 U.S. 793, 803, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (concerns regarding the broad application of preclusion are lessened when the suit at issue raises claims based upon public law rather than private rights). In the public law context, the number of plaintiffs with standing is potentially limitless. *See Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.,* 750 F.2d 731, 741 (9th Cir.1984) (en banc) (litigants were precluded from challenging segregation in public schools because the matter had already been litigated in the state courts). Concerns of judicial economy and cost to defendants, while present in every suit, are particularly important in these cases. *Tyus,* 93 F.3d at 456.

A deliberate attempt by litigants to evade the prior judgment of the court is a factor to be considered in the privity analysis. *See Tahoe–Sierra,* 322 F.3d at 1084; *see also Tice v. American Airlines,* 162 F.3d 966, 971 (7th Cir.1998) (privity can be found when there exists deliberate maneuvering to avoid the effects of the judgment). Three days after the complaint which Klamath–Siskiyou, a named party in the *American Lands* litigation, filed was dismissed, Headwaters filed a virtually identical complaint with much of the language taken verbatim. Headwaters' attorney, who also was the attorney for Klamath–Siskiyou, filed the complaint with the only appreciable difference between the documents being the names of the litigants. A finding of privity is not appropriate simply because the same attorney represented parties in prior and subsequent proceedings, *South Central Bell Telephone Co. v. Alabama,* 526 U.S. 160, 168, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999), but, when as here, a tactical decision is made to manipulate the court's decision and avoid the preclusive effect of a prior judgment, privity can be properly found. *See Tahoe–Sierra,* 322 F.3d at 1081; *Tyus,* 93 F.3d at 455.

Knowingly refiling a decided action under another party name not only wastes scarce judicial resources but also shows corrosive disrespect for the finality of the decision. Were we to hold otherwise, groups would be free to attack a judgment *ad infinitum* by arranging for successive actions leaving the Forest Service's ability to regulate the National Forests perpetually in flux. *Tahoe–Sierra,* 322 F.3d at 1084; *see Alpert's Newspaper Delivery Inc. v. New York Times Co.,* 876 F.2d 266, 270 (2d Cir.1989)(finding privity even when the association was not itself a party, but provided substantial "tactical and financial help" to the parties in both actions). Further, the ability of groups to continually bring successive suits based upon the same cause of action and nucleus of facts, calls into question the Federal courts' ability ever to settle a case based upon public law.

Judge Berzon contends in her dissent that *stare decisis* is all of the protection that the Forest Service needs against repeat litigation because once a decision has been rendered by this court it would bind future panels of this court and the district court. Although we agree that the doctrine of *stare decisis* would prevent inconsistent results in successive litigation on the same issue, the purpose behind the principle of res judicata is that the Forest Service should not have to litigate succes-

sive claims on the same issue after it has been resolved once. *See Schimmels*, 127 F.3d at 881. It is as much the burden of repeated litigation as the risk of inconsistent results that justifies resolving this case on res judicata grounds. *See Clements*, 69 F.3d at 330.

Judge Berzon's dissent advances the novel theory that in order for the Forest Service to avoid successive repeat litigation of the same public interest, it must treat the litigation, which was not brought as a class action, as through it were a class action under Fed.R.Civ.P. 23(c). We know of no authority for such a proposition.

Reviewing courts properly apply fairly strict scrutiny to sua sponte dismissals on the basis of res judicata. Ordinarily, the adversarial system is likely to provide a more dependable basis for resolving such questions as privity and identity of issues involved in cases of this kind. We are not unmindful of these concerns. However, in this case, it is difficult to imagine a successful argument that could be mounted upon exhaustive briefing and lengthy hearings to show that the legitimate issues and interests of the litigants could be more accurately determined by protracted litigation. Indeed, in terms of both judicial economy and the husbanding of client resources, it would appear that hiring more attorneys to present more argument in this case would be a spectacular waste of resources.

Concerns regarding the protections afforded potential litigants in the public law areas are easily appeased. The district court was quite right in admonishing the litigants that the proper method to attack the *American Lands* judgment was directly and not collaterally through the refiling of this suit. *Headwaters*, 159 F.Supp.2d at 1258. Klamath–Siskiyou sought to challenge the *American Lands* judgment by filing a Rule 60(b) motion in the *Klamath–*

*Siskiyou* action. The proper method to have challenged the *American Lands* judgment was to have filed a Rule 60(b) motion in that case. Klamath–Siskiyou did not challenge the judgment rendered in the second action it brought, either by a 60(b) motion or by an appeal. Instead the attorney for Klamath–Siskiyou filed a virtually identical suit three days later, substituting a different named plaintiff. The doctrine of *res judicata* is not so easily avoided.

## IV. Conclusion

We hold that Headwaters' complaint was correctly barred by *res judicata* because there exists in the present dispute, an identity of claims, a final judgment on the merits and privity between Headwaters and the prior litigants in both the *American Lands* and *Klamath–Siskiyou* litigation. Therefore, the district court's decision is affirmed.

**AFFIRMED.**

BERZON, District Judge, dissenting:

We have in this nation a " 'deep-rooted historic tradition that everyone should have his own day in court,' " and presume, consequently, that " '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.' " *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (citations omitted; alteration in original). Yet, the court decides today that two environmental organizations who have never litigated the validity of several timber sales are precluded from doing so because counsel for other organizations, a year earlier, signed a dismissal with prejudice of a similar challenge.

The court so decides although the record is entirely silent as to: (1) any relationship between the organizations in the earlier suit and the organizations—or the members of the organizations—who are plaintiffs in this one; (2) the reason for the earlier dismissal with prejudice, including whether the original plaintiffs had standing to litigate the case they sought to bring; (3) whether the plaintiffs in the earlier suit obtained any relief at all, although it appears that they did not; (4) whether the present plaintiffs, or their members, knew of the earlier suit while it was ongoing or had any involvement in prosecuting it, although there is no indication that they did; and (5) whether the filing of the second suit was in any respect instigated by any of the plaintiffs in the original suit, although the majority appears to assume, with no basis in the record, that it was. It so decides although we do know (1) that the earlier case was not brought as a class action under Rule 23 of the Federal Rules of Civil Procedure; (2) that the district court in the earlier case therefore did not provide any safeguards to assure that all parties potentially affected by the judgment were fairly represented, as would be the case were certification of a class sought, see Fed.R.Civ.P. 23(a)(4); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Crawford v. Honig, 37 F.3d 485, 487 (9th Cir.1994); (3) that there is no indication that the plaintiffs in the original suit thought they were representing anyone other than themselves; and (4) that the district court in the prior litigation did not approve the stipulation of dismissal as fair to those affected, as would have been the case had the suit proceeded as a class action, see Fed.R.Civ.P. 23(e); Ayers v. Thompson, 358 F.3d 356, 369 (5th Cir. 2004); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir.2000).

To conclude that the present plaintiffs are bound by an unlitigated judgment, entered by organizations entirely independent of them except for a common lawyer, is simply unprecedented. While there are limited circumstances, denominated "privity" or, sometimes, "virtual representation," in which one individual or entity can be bound by litigation conducted by another, those circumstances have never included circumstances in which the litigation is by parties who have no relationship with each other, and there was no attempt in the original litigation to assure fairness to any potentially affected third parties, and there was no litigation on the merits in the first suit. See Irwin v. Mascott, 370 F.3d 924, 930 (9th Cir.2004) (summarizing the limited circumstances in which this court recognizes virtual representation). Under such circumstances, neither the due process underpinnings of modern res judicata law, see S. Cent. Bell Tel. Co. v. Alabama, 526 U.S. 160, 168, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999); Richards, 517 U.S. at 797 & n. 4, 116 S.Ct. 1761; Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), nor the purposes of judicial economy and prevention of vexatious litigation that underlie preclusion law, see Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), are served.

Instead, under the majority's analysis, the government here avoids ever litigating the propriety of the timber sales in question, because some environmental organizations, for unknown reasons, decided to walk away from court. At the same time, the plaintiffs will never have a chance to obtain a court determination of their contention that the government's timber sales policy is illegal.

Denominating this case one concerning "public law" does not alter these concerns

or insulate this case from inquiry under ordinary preclusion standards. In federal court, every litigant must allege a personal injury in fact to establish standing, *see* *Lujan v. Defenders of Wildlife* (*Lujan II* ), 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), so every litigation necessarily seeks to vindicate, to some degree, private rather than public rights.

Because the majority's decision closes the courthouse door in contravention of even the most expansive notions of modern preclusion law, I respectfully dissent.

## I. Background

I briefly amplify the majority's account of the history of this litigation:

The October 26, 1999, amended complaint in *American Lands Alliance v. Williams*, No. 99–697–AA (D.Or.1999), filed by six self-described environmental organizations and two individuals, advanced nine claims for relief under the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1687, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370, and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706, challenging nineteen United States Forest Service logging programs in the Willamette, Mt. Hood, Rogue River, and Siskiyou National Forests. The complaint sought declaratory and injunctive relief requiring the Forest Service to complete an environmental impact statement under NEPA and otherwise to comply with NFMA, NEPA, and APA procedural requirements before implementing the logging plans.

Before any developments in the case apart from the filing of a scheduling order and an amended complaint—before, that is, any litigation on the merits—and, as far as the record shows, without receiving any concessions from the defendants, the *American Lands* plaintiffs stipulated to a dismissal of their complaint with prejudice seven months after filing suit. District Judge Aiken issued the dismissal on January 19, 2000. The *American Lands* complaint was not denominated a class action, and there is no indication that Judge Aiken reviewed the fairness of the stipulation as it affected third parties.

A year later, on February 21, 2001, one of the organizational plaintiffs in *American Lands*, the Klamath–Siskiyou Wildlands Center ("Wildlands Center"), filed a new complaint regarding two of the nineteen timber sales, seeking declaratory and injunctive relief under NFMA and NEPA. *Klamath–Siskiyou Wildlands Ctr. v. U.S. Forest Serv.*, No. 01–3018–HO (D.Or. Feb. 21, 2001). The Forest Service sought dismissal of the new suit on "res judicata" grounds, based on the plaintiff's participation in *American Lands*. The Wildlands Center then sought relief from the dismissal of *American Lands* under Federal Rule of Civil Procedure 60(b). District Judge Hogan dismissed this second suit without prejudice and denied the Rule 60(b) motion regarding *American Lands*.

As far as the present record shows, only then did the plaintiffs here ("Headwaters") [1] learn of the *American Lands* and *Klamath–Siskiyou* litigation and seek to

---

1. There are two plaintiffs in this case, Headwaters, Inc. and the Forest Conservation Council. The record indicates that Headwaters, but not the Council, has been a coplaintiff with the Klamath–Siskiyou Wildlands Center in unrelated litigation, *Headwaters, Inc. v. Bureau of Land Management*, No. 01–3063 (D.Or.). Contrary to the government's sug-

gestion, this fact does not bear on the possibility of privity between Headwaters and the Wildlands Center with regard to the timber sales at issue here. Headwaters and the Forest Conservation Council are therefore identically situated for purposes of deciding whether the instant suit is precluded.

enjoin the challenged timber sales. Headwaters instigated suit in the same district court in which the *American Lands* and *Klamath–Siskiyou* had been filed, using the same lawyer and a similar complaint as in *Klamath–Siskiyou* (but not as in *American Lands*). The current complaint challenges only two of the nineteen sales challenged in *American Lands*; represents that the parties make different use of, and have different interests in, the forests than did the *American Lands* plaintiffs; and relates its claims to particular endangered species, which the *American Lands* complaint did not do. Judge Hogan, to whom the present case was also assigned, dismissed the Headwaters complaint sua sponte under the res judicata doctrine, having heard no argument and received no briefing on either the merits of the case or the applicability of res judicata.[2]

## II. Sua Sponte Dismissal

My major concern is with the majority's serious misapplication of the concept of privity, with the result that the present plaintiffs are being improperly denied their day in court. This case, however, could and should have been disposed of before ever reaching the merits of the preclusion issue decided by the district court. The district court dismissed the complaint sua sponte, without affording the plaintiffs any opportunity to contest its determination that their suit was precluded. I would reverse on this ground alone

and not reach the merits of the undeveloped preclusion issue.

The district court's order of dismissal recounted only the following pertinent facts: That it had heard argument in a "similar case," *Klamath–Siskiyou;* that Headwaters had hired the Klamath–Siskiyou Wildlands Center's attorney; that the Headwaters complaint contained "virtually identical claims" as the Wildlands Center's; and that the parties in the earlier cases were seeking to litigate " 'not . . . any interests peculiar to themselves, but . . . the public right to require Forest Service compliance with NEPA [and the NFMA]' " (quoting *Sierra Club v. Block,* 576 F.Supp. 959, 966 (D.Or.1983)) (alteration in original). From those considerations alone, the district court concluded that "[t]he elements of *res judicata* are satisfied."

Although preclusion may be grounds for dismissal when neither party has raised the issue,[3] *Evarts v. W. Metal Finishing Co.,* 253 F.2d 637, 639 n. 1 (9th Cir.1958), so far as I can tell this court has never upheld a sua sponte dismissal for claim or issue preclusion where the parties were not given any opportunity to be heard on the issue. In *McClain v. Apodaca,* 793 F.2d 1031, 1032–33 (9th Cir.1986), we affirmed a dismissal entered after the parties filed post-trial briefs on a res judicata question initially raised by the bankruptcy court. Similarly, in *Hawkins v. Risley,* 984 F.2d 321 (9th Cir.1993) (per curiam), we affirmed a dismissal after the parties

---

**2.** The record in this case is silent on what happened next, but we may take judicial notice of the *American Lands* docket, which shows that all the original plaintiffs in that case filed a motion for relief from the earlier dismissal on July 9, 2001, four days after the *Headwaters* complaint was filed. *See St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir.1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts . . . if those

proceedings have a direct relation to matters at issue."). The *American Lands* plaintiffs withdrew that motion on August 9, 2001, after the district court's sua sponte dismissal of this case.

**3.** A court has no obligation to raise preclusion on its own. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988).

had "adequate opportunity to examine and contest the application of preclusion" before the district court. *Id.* at 324. Conversely, in *State of Nevada Employees Ass'n v. Keating,* 903 F.2d 1223 (9th Cir. 1990), we reversed because, by not allowing briefing on the issue, "the trial court did not subject its res judicata decision to the rigors of the adversarial process . . . ." *Id.* at 1225; *see also Favish v. Office of Indep. Counsel,* 217 F.3d 1168, 1171 (9th Cir.2000) (noting that district court raised collateral estoppel sua sponte but provided the parties an opportunity to argue); *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1157 (9th Cir.2000) (instructing that, on remand, the parties could litigate a collateral estoppel problem first raised by the district court).

The closest we have come to the majority's decision here was in *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery,* 44 F.3d 800, 803 (9th Cir.1995). Even there, while we affirmed a sua sponte summary judgment in favor of a nonappearing defendant based on collateral estoppel, we rested our opinion on the fact that the parties who lost on summary judgment had been provided an opportunity to present arguments against the application of preclusion. Headwaters was afforded no such opportunity.

Sua sponte dismissal is particularly inappropriate in a case such as this one, where the pertinent considerations require factual development outside the bare pleadings. The law of this circuit regarding the circumstances in which"[a] non-party can be bound by the litigation choices made by his virtual representative" [4] was recently summarized in *Irwin,* albeit in a somewhat different context: "In short, a close relationship, substantial participation, and tactical maneuvering all support a finding of virtual representation; identity of interests and adequate representation are necessary to such a finding." 370 F.3d at 930. As this summary indicates, the pertinent considerations include factors that require development of the record in the allegedly precluded litigation.

For example, although the majority here relies in part on an assumption that the plaintiffs in *Klamath–Siskiyou* made a "tactical decision . . . to manipulate the court's decision and avoid a preclusive effect of a prior judgment," *ante* at 1031, and implies that the plaintiffs in this case somehow "arrang[ed] for successive actions leaving the Forest Service's ability to regulate the National Forests perpetually in flux," *ante* at 1031, there is no record support for either assertion. True, the plaintiffs here are asserting that the prior judgment does not preclude this suit because they neither participated in nor were fairly represented in the earlier one. But to call that assertion tactical manipulation

---

4. Although the use of terminology varies, the more careful opinions, in both this circuit and others, recognize that "privity" is a term used generally to denote those circumstances in which it is fair to preclude a party absent from the earlier litigation from bringing a later suit, *see, e.g., In re Schimmels,* 127 F.3d 875, 881 (9th Cir.1997); *Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 971 (7th Cir.1998), while "virtual representation" is a subcategory of "privity" covering circumstances in which the more traditional requisites of privity are missing, but an absent party can nonetheless be fairly precluded from future litigation because its interests were sufficiently represented in the earlier case to comport with due process requirements. *See Irwin,* 370 F.3d at 930 ("'[P]rivity' . . . includes the concept of virtual representation" (alteration in original; citation omitted)); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 193 F.3d 415, 422–23 (6th Cir.1999) (en banc) (stating that the privity concept includes three categories, successors in interest, controlling parties, and "a nonparty who is *adequately represented* by a party"; the last category is also termed "virtual representation"); *id.* at 431 (Moore, J., concurring in judgment) (same).

is to preclude the assertion of a defense to a preclusion claim. There is absolutely no indication of real manipulation—no indication that, for example, the *American Lands* or *Klamath–Siskiyou* plaintiffs were somehow involved in instigating this suit, or in funding it, or that, conversely, the present plaintiffs arranged for the earlier litigation.

Similarly, there is no record before us concerning adequate representation considerations. We do not know whether Headwaters knew of the earlier suits while they were pending, or why the *American Lands* suit was dismissed with prejudice in the absence of any apparent benefit to the plaintiffs in that case. *See Richards,* 517 U.S. at 800–01, 116 S.Ct. 1761 (noting that ordinarily absent parties must have notice of an earlier suit that could resolve their legal rights, and that, while "adequate representation might cure a lack of notice ... a prior proceeding, to have a binding effect on absent parties, would at least have to be 'so devised as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.'" (quoting *Hansberry v. Lee,* 311 U.S. 32, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940))). Nor do we know anything about the relationship between the present plaintiffs and the former ones, such as whether Headwaters and the Wildlands Center have overlapping officers or members. Without that information, one cannot evaluate the "close relationship" prong of this circuit's virtual representation/privity analysis, as articulated in *Irwin.*

In short, the problem with the precipitous dismissal here is not simply that there was no opportunity to make legal arguments regarding preclusion but that there was no chance to develop pertinent facts. We should vacate and remand for proper development of any preclusion issue. If we are not going to do that, then we cannot, as does the majority, decide the case as if facts were established that are not.

### III. Adequacy of Representation

As the majority recognizes, we allow claim preclusion to run against third parties when, but only when, a later suit involves (1) identical claims as a prior suit, (2) a final judgment on the merits in the prior suit, and (3) privity between the parties in the two actions. *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir.2003).[5] The central issue in this case

5. The majority treats the present case as one involving claim rather than issue preclusion— in the old terminology, res judicata rather than collateral estoppel. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *see also New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court has indicated that preclusion of absent parties necessarily "falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Any issue preclusion contention here would necessarily fail. Unlike claim preclusion,

> issue preclusion attaches only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (Second) of Judgments § 27, p. 250 (1982). "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated ..." [*Id.,* comment e, at 257].

*Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (first alteration in original); *see also Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003), *cert. denied,* — U.S. —, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003). As

concerns the final, privity prong. I therefore concentrate on the privity issue.

Given the paucity of the record, the majority necessarily holds that a similarity of interests *alone* is a sufficient basis for finding privity binding later plaintiffs, at least in cases in which that interest is one that can be characterized as "public." This conclusion cannot be squared with our case law or that of the Supreme Court, the majority's selective reliance on isolated sentences from various cases notwithstanding.

1. *Privity Generally:* " 'Privity' ... is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1997) (quoting *Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir.1977)). Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest or *res*, chiefly: co-owners and co-tenants of property; decedents and their heirs, successors in interest and survival claimants; bailors and bailees; joint obligees; assignors and assignees; parties to a contract, and in some cases promisees and third-party beneficiaries; indemnitors and indemnitees; corporations and their officers or shareholders; partners and their partnerships; and unincorporated associations and their members. *See* RESTATE-MENT (SECOND) OF JUDGMENTS, ch. 4, topic 2 (1980); *see also* Fed.R.Civ.P. 23.2(governing actions affecting associations).

However, "the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." *Richards*, 517 U.S. at 798, 116 S.Ct. 1761. *Richards* cited two sources for this statement: the Restatement (Second) of Judgments and *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). The former adds to the traditional privity categories circumstances in which "[a] person who is not a party to an action ... is represented by a party," including trustees and beneficiaries, other fiduciary relationships and consensual or legal representational relationships, and "[t]he representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member." RESTATEMENT (SECOND) OF JUDGMENTS § 41(1). *Martin*, in the portion quoted in *Richards*, adds "certain limited circumstances [in which] a person, although not a party, has his interests adequately represented by someone who is a party," including " 'class' or 'representative' suits" and "control of litigation on behalf of one of the parties in the litigation," as well as "special remedial scheme[s] ... expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate." 490 U.S. at 762 n. 2, 109 S.Ct. 2180.

---

there were no final factual or legal determinations in *American Lands*, the final judgment in *American Lands* cannot collaterally estop Headwaters.

Our cases, however, do not appear to have adhered to the distinction suggested by *Montana*. *See, e.g., Schimmels*, 127 F.3d at 885 (binding the government to a default judgment against qui tam relators); *Pedrina v. Chun*, 97 F.3d 1296, 1302–03 (9th Cir.1996)

(applying res judicata to bind plaintiffs in federal court to a dismissal, for want of prosecution, of a prior state-court complaint by an overlapping group of plaintiffs). As I would reach the same result as that suggested by *Montana* through a claim preclusion analysis, I do not further pursue the question whether this case is properly analyzed as one involving claim rather than issue preclusion.

It is this amalgam of circumstances, broader than traditional privity relationships, that, as I understand it, have been referred to in our cases as "virtual representation," and that *Irwin* recently summarized.[6] But, as *Irwin* indicates, and as my research has confirmed, this Circuit, like the Seventh Circuit, *see Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 971(7th Cir. 1998), has never recognized preclusion based *solely* on parallel legal interests, identical or otherwise. Instead, other factors—a close relationship between the former and present litigants, participation in the earlier litigation, or "tactical maneuvering"[7]—have also been present as equitable factors favoring preclusion. *See Irwin,* 370 F.3d at 930; *see also Green v. City of Tucson,* 255 F.3d 1086, 1100–01(9th Cir.2001) (en banc).

In particular, mirroring the Restatement criteria for representational relationships and cabining the *Irwin* "close relationship" factor, we have stressed, repeatedly, that for a "nonparty [to] be bound if a party is so closely aligned with its interests as to be its 'virtual represen-

---

**6.** Trenchant opinions from other circuits in recent years have questioned the utility of the term "virtual representation" and the concepts it has encompassed, especially in light of the Supreme Court's analysis in *Richards*. *See Becherer,* 193 F.3d at 422–24; *id.* at 431–32(Moore, J., concurring in the judgment); *Tice,* 162 F.3d 966; *Bittinger v. Tecumseh Prods.,* 123 F.3d 877, 880–82 (6th Cir.1997); *see also Tyus v. Schoemehl,* 93 F.3d 449, 458–59 (8th Cir.1996) (Henley, J., concurring in result). I tend to share the concerns articulated by Judge Wood for the Seventh Circuit that the "virtual representation" concept is "amorphous," "illustrates the harm that can be done when a catchy phrase is used to describe a perfectly sensible result," and "cast[s] more shadows than light on the problem to be decided." *Tice,* 162 F.3d at 970–71. I am also sympathetic with the accusations that virtual representation "lack[s a] clear or coherent theory," is invoked "in circumstances that go beyond anything that is easily justified" in "episodic" cases lacking any "clear pattern," and does not appear to "add[] anything of value to other theories of 'privity.'" 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4457, at 512–13 (2d ed.2002). For present purposes, however, I use the terms as it is used in *Irwin*—to capture the factors that, in additional to traditional privity relationships, justify the preclusion in later litigation of parties not of record in an earlier case.

**7.** Although our cases, including *Irwin,* have mentioned the "tactical maneuvering" factor, the only case of this court that has been cited as applying that factor is *Pedrina,* 97 F.3d at

1302. *See Irwin,* 370 F.3d at 930. *Pedrina,* however, does not mention that consideration. And in *Pedrina,* "[m]ost of the plaintiffs in the instant action were parties to the earlier state court proceedings, and the plaintiffs have not argued that there was any lack of privity on the plaintiffs' side." 97 F.3d at 1302. Thus, the plaintiffs who did not participate in the earlier proceedings apparently acquiesced in their representation by those who did.

Indeed, as far as I can ascertain, there is no federal appellate case in which the "deliberate maneuvering" doctrine is necessary to the holding. Although the Eighth Circuit in *Tyus* did discuss that factor, the essence of that case is that the plaintiffs in the second suit included individuals who were seeking to avoid litigation decisions made in an earlier case *in which they were parties.* 93 F.3d at 452. *Jaffree v. Wallace,* 837 F.2d 1461 (11th Cir.1988) (per curiam), likewise involved maneuvering by a family who had jumped in and out of related actions, and so had been actually present in the original suit found to have preclusive effect against their later claims. Similarly, the "control" or "participation" consideration would encompass circumstances in which the losing litigant in one case funds and directs a second litigant filed in the name of other plaintiffs, so as to further his own interests rather than those of the putative factors.

I am therefore far from certain that there is or ought to be an independent "tactical maneuvering" consideration. As the facts of this case, the majority's implication aside, do not prove any such maneuvering, I do not address the issue further.

tative,'" there must be "an express or implied legal relationship by which parties to the first suit are accountable to non-parties who filed a subsequent suit with identical issues." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980); *see also Favish*, 217 F.3d at 1171(repeating this accountability requirement); *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir.1984) (same). Applying the accountability requirement, implicitly if not explicitly, we have held, for example, in the three cases from this court most relied upon by the majority, that members of an organization with authority to represent its property owner members with regard to their use of their property are precluded from filing a second suit raising the same issues previously litigated by the organization, *Tahoe–Sierra*, 322 F.3d at 1081–84; that the United States is bound by a prior qui tam suit filed by a relator, given the legal representational relationship between the relator and the government created by the False Claims Act, *Schimmels*, 127 F.3d at 882–84; and that the federal Environmental Protection Agency is precluded from filing a second enforcement suit after the state Department of Ecology had earlier litigated the same alleged violation, given the relationship between state and federal enforcement authority under the Federal Water Pollution Control Act, *ITT Rayonier*, 627 F.2d at 1003. Conversely, we have refused to find privity, or virtual representation, where the former and present litigants shared only "an abstract interest in enforcement" of the same legal requirement. *Favish*, 217 F.3d at 1171(quoting *ITT Rayonier*, 627 F.2d at 1003).

Here, as already recounted, the record simply does not demonstrate any of the *Irwin* "plus" factors. There is certainly no "express or implied legal relationship by virtue of which the parties to the first suit are accountable to non-parties who filed a subsequent suit with identical issues." *ITT Rayonier*, 627 F.2d at 1003. The *American Lands* litigants, as far as the record shows, have no legal connection—indeed, no connection, other than similar concerns with the Forest Service's timber sales—with Headwaters, and were in no way accountable to the present plaintiffs in their earlier suits. Instead, we have here nothing but "an abstract interest in enforcement" of the same legal requirement, and the same lawyer, a factor that, as the majority recognizes, was also present in, and rejected in, *South Central Bell*, 526 U.S. at 168, 119 S.Ct. 1180. *See also Favish*, 217 F.3d at 1171(finding no privity between a party and his lawyer).[8] There is, consequently, simply no basis in our prior case law, aside from some out-of-context language, that supports the conclusion the majority reaches. I would reverse on that basis.

2. *Adequate Representation:* Even considered as an original proposition, the majority's conclusion that concurrent interests alone can preclude a litigant who was absent from earlier litigation cannot be reconciled with *Richards*, or, for a different reason than those already surveyed, with *Irwin*. As *Irwin* recognizes, adequate representation is a *sine qua non* of the so-called "virtual representation" branch of privity. 370 F.3d at 930. And as *Richards* holds, adequate representation is a due process prerequisite to precluding a litigant from his day in court if he was not a party to the earlier litigation. 517 U.S. at 800–01, 116 S.Ct. 1761. I therefore understand *Irwin's* adequate

---

**8.** The plaintiffs' lawyer in this case is the same as in *Klamath–Siskiyou*, but not as in *American Lands*, the case upon which the majority bases preclusion.

representation prong as subsuming *Richards's* due process requirements.

*Richards* considered a taxpayer class action challenging a county tax on federal constitutional grounds. The county claimed Richards's suit was precluded by an earlier case in which the city of Birmingham and three other taxpayers (not claiming to represent a class) litigated and lost a state-law challenge to the tax. The Supreme Court of Alabama held that, because the earlier plaintiffs could have raised analogous federal claims in their suit, that suit precluded Richards's. *See* 517 U.S. at 795–96, 116 S.Ct. 1761.

The Court reversed, holding that Alabama's application of res judicata foreclosed the *Richards* plaintiffs' due process right to their own day in court, even though they claimed "essentially identical" interests as those litigated before. *Id.* at 796, 116 S.Ct. 1761. As the Court emphasized, the prior individual plaintiffs gave no notice to Richards's class that they intended to represent and litigate on behalf of the class, *id.* at 799, 116 S.Ct. 1761; there was no indication the court hearing the first case "took care to protect the interests of" the *Richards* plaintiffs, *id.* at 802, 116 S.Ct. 1761; and "the judgment did not purport to bind any county taxpayers who were nonparties." *Id.* Thus, "to contend that the plaintiffs in [the earlier litigation] somehow represented petitioners, let alone represented them in a constitutionally adequate manner, would be 'to attribute to them a power that it cannot be said that they had assumed to exercise.'" *Id.* at 802, 116 S.Ct. 1761(quoting *Hansberry*, 311

U.S. at 46, 61 S.Ct. 115). As the two sets of plaintiffs were otherwise "best described as mere strangers to one another," the Court was "unable to conclude that the [earlier] plaintiffs provided representation sufficient to make up for the fact that [the later plaintiffs] neither participated in, nor had the opportunity to participate in, the [earlier] action." *Id.* (citations and internal quotation marks omitted). Reaffirming *Richards* three Terms later, the Court declined to find third-party preclusion in *South Central Bell*, again stressing that absent some relationship between the litigants in two cases or the protections accorded by class action rules, a second group of plaintiffs is not bound by earlier litigation simply because it is asserting parallel interests. 526 U.S. at 167–68, 119 S.Ct. 1180; *see also Green*, 255 F.3d at 1100–01(explaining that *Richards* and *South Central Bell* require more than identity of interests for third-party preclusion to run).

It is entirely mysterious to me how the majority can maintain, in light of *Richards*, that the "strangers" in this case were accorded in the first case, *American Lands*, "litigation so conducted as to insure the full and fair consideration of the common issue." *Hansberry*, 311 U.S. at 43, 61 S.Ct. 115, *quoted in Richards*, 517 U.S. at 801, 116 S.Ct. 1761. As in *Richards*, the *American Lands* litigation was not structured as a class action, even putatively.[9] There was, as far as appears, no notice to any absent party regarding the pending litigation, or, perhaps more critically in this instance, of the proposed "set-

---

9. In *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir.1979), we held that an earlier case, although not formally certified under Rule 23, "was brought as a class action and treated by the court as a class action," and so entitled to preclusive effect against members of the de facto class. *Id.* at 1126. Assuming *Jackson* is still good law after *Richards*, this case does

not meet the *Jackson* criteria, as it was neither filed nor treated as a class action. *But see Tice*, 162 F.3d at 973–73(holding, after *Richards*, that "[u]nless there is a *properly certified* class action ... normal privity analysis must govern whether nonparties to an earlier case can be bound to the result" (emphasis added)).

tlement." The district court had no reason to consider whether the stipulated dismissal was fair to absent parties and did not do so. *See* Fed.R.Civ.P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under these circumstances, any notion that the *American Lands* plaintiffs were adequately representing Headwaters, virtually or otherwise, is a fiction.

This is not a case, either, in which one could say in retrospect that the earlier case was in fact fully and fairly litigated. *See, e. g., Tahoe–Sierra*, 322 F.3d at 1077(noting eighteen years of vigorous litigation of the controlling issue); *ITT Rayonier*, 627 F.2d at 1003(noting absence in that case of any indication that the virtual representative did not vigorously assert the common position). As far as the record shows, the common position was not litigated at all, nor was it compromised in any way that provided a benefit to absent (or, for that matter, present) parties. True, stipulated dismissals are merits determinations for res judicata purposes when a single party's interests are involved in both cases. *See, e.g., Concha v. London*, 62 F.3d 1493, 1507–08 (9th Cir. 1995).[10] I would hold, however, that a stipulated dismissal not submitted to the court for consideration as to its possible fairness to absent parties simply cannot fully and fairly litigate an issue for purposes of providing adequate representation to an entirely independent absent party. Any other conclusion would turn the "full and fair consideration" requirement of *Hansberry*, 311 U.S. at 43, 61 S.Ct. 115, and *Richards*, 517 U.S. at 801, 116 S.Ct. 1761, into an illusion.

As I would so hold, I would not consider whether, looked at through the prism of incentive to litigate rather than the actual litigation history, there is a class of cases in which the incentives of the original litigant to mount the best possible legal challenge can substitute for structural protection of absent parties such as is provided for class litigation. *See, e.g., Tyus v. Schoemehl*, 93 F.3d 449, 455–56 & n. 7 (8th Cir.1996). But even looked at in terms of such *ex ante* incentives, there could be no preclusion here. We have no assurance in this case that the *American Lands* plaintiffs had such an interest. Litigants bring and dismiss suits all the time, for any number of reasons only tangentially related to the merits of the subject-matter of the suit. *American Lands* and *Klamath–Siskiyou* both sought only injunctive relief, not damages, and neither were suits in which an attorney fee award for prevailing litigants was a foregone conclusion, *see* 28 U.S.C. § 2412, so the incentives to pursue the case were not monetary. For all we know, the *American Lands* plaintiffs were only seeking publicity, or were attempting to bolster some nonlitigation activity, or hoped to bluff the Forest Service into abandoning its plans without full litigation, or realized that they would not be able to establish standing to litigate. *Cf. Bell v. Bonneville Power Admin.*, 340 F.3d 945, 951 (9th Cir.2003) (holding plaintiffs lacked standing to mount a NEPA challenge). Thus, while I do not think that the presence of strong incentives to litigate fully in the earlier case can substitute for structural protections of absent parties *or* evidence of actual, vigorous litigation, this case

10. It is not even clear that a stipulated dismissal has res judicata effect for the named parties in the dismissed suit. In *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), the Court noted that although dismissals are commonly denominated adjudications "on the merits," only a judgment that "actually passes directly on the substance of a particular claim before the court … triggers the doctrine of res judicata or claim preclusion." *Id.* at 501–02, 121 S.Ct. 1021 (alterations and citation omitted).

presents no occasion to consider the question.

One senses, in the majority's contrary conclusion regarding adequacy of representation, a disquiet with the asymmetry of the due process principle under *Richards*. It is true, of course, that had the taxpayer plaintiffs in the original lawsuit in *Richards*, or the plaintiffs in *American Lands* here, prevailed, the plaintiffs in the second litigation might well have benefitted, either by way of stare decisis or nonmutual collateral estoppel. *See Pérez–Guzmán v. Gracia*, 346 F.3d 229, 237 (1st Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1724, 158 L.Ed.2d 401 (2004). But that asymmetry is no different than prevails under modern preclusion law generally.

"Multiple victims of air disasters, multiple stockholders of companies that have committed securities violations, and multiple holders of rights in pensions normally may all bring their own suits even if the defendant engaged in a single course of conduct. . . ." *Tice*, 162 F.3d at 968. The reason this is so is that, as the Supreme Court recognized in rejecting the venerable mutuality of estoppel principle, due process principles so require:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Blonder–Tongue Labs.*, 402 U.S. at 329, 91 S.Ct. 1434. Because similar principles do not require that one who was a party in the first case have a chance to litigate anew, and because "the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata," *id.* at 325, 91 S.Ct. 1434 (quoting *Bruszewski v. United States*, 181 F.2d 419, 421 (3d Cir.1950)), the federal courts have largely abandoned the mutuality principle in favor of such savings of judicial resources as is constitutionally permissible. *See Allen*, 449 U.S. at 94–95, 101 S.Ct. 411; *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Labs.*, 402 U.S. at 330–33, 91 S.Ct. 1434. *See generally* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4463, at 677 (2d ed.2002). To broaden concepts of virtual representation to include, without class action protections, all circumstances in which plaintiffs in the second litigation seek to raise "the identical issue" already litigated without their participation is to resuscitate the mutuality principle, albeit this time at the expense of constitutional due process requirements.

3. *The Proposed Public Law Exception:* The majority's response to all of the foregoing, insofar as it suggests one, is that this case, unlike *Richards*, involves "public law areas," and that in "public law areas," different considerations of both due process and public policy prevail. *Ante* at 1032. *Richards* indicated that where a litigant is complaining about a "public action that has only an indirect impact on his interests," due process principles not only permit limitation of successive suits by different plaintiffs but permit states to deny standing entirely. 517 U.S. at 803, 116 S.Ct. 1761. The federal case cited for this proposition in *Massachusetts v. Mellon*, 262 U.S. 447, 486–89, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

It is telling that *Mellon* held that there is *no* taxpayer standing in federal court to litigate challenges to the misallocation of public funds without some personal injury,

see also Doremus v. Bd. of Educ., 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), although some state statutes and courts do authorize taxpayer standing without concrete injury, see, e.g., Smith v. Gov't of Virgin Islands, 329 F.2d 131 (3d Cir.1964); Hollis v. Piggott Jr. Chamber of Commerce, Inc., 248 Ark. 725, 453 S.W.2d 410, 411 (1970). The Mellon citation therefore cannot be taken as an indication that there is a category of federal cases that are "public law" cases and as to which the holding in Richards does not apply.

I do not believe such a category of federal "public law" cases, exempt from Richards's due process requirements, exists. For federal standing purposes, all litigants must show a "concrete and particularized," redressable "injury in fact." Lujan II, 504 U.S. at 560, 112 S.Ct. 2130. And "[b]y particularized, [the Court] mean[s] that the injury must affect the plaintiff in a personal and individual way." Id. at 560 n. 1, 112 S.Ct. 2130. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Further, federal litigants may not sue solely upon "generalized grievances" shared by the public at large. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (citation omitted). Thus, it is

simply not true, in federal court, that "the number of plaintiffs with standing is potentially limitless," ante at 1031.

Conversely, the number of plaintiffs with standing to complain about the validity of a generally applicable tax statute is quite large, and the question whether a tax statute is unconstitutional and therefore unenforceable is surely a question of "public law," both in the sense that it involves the prerogatives of government and in the sense that it affects a large number of people. Yet, Richards holds that there cannot be preclusion based on parallel interests alone, notwithstanding concerns of "judicial economy and cost to defendants." Ante at 1031. I assume that, consistently with Richards, the majority would permit a landowner in a national forest to sue to contest a federal limitation on the use of his property even if other, entirely independent landholders had previously brought a similar suit and lost (or stipulated to dismissal of the suit). Because of the requirements of federal standing, and because the concept of "public law" is necessarily amorphous, there is no principled distinction between such a "public law" case and this one.[11]

Moreover, the concerns the majority expresses are surely out of place where, as here, there has been no adjudication of the common issue. Far from litigating ad infinitum, the defendant in this sequence of cases has not litigated at all, nor, as far as

---

11. The plaintiffs here allege that their members and staff "regularly use and enjoy the forests ... for environmental, recreational, educational, spiritual, and aesthetic purposes" (emphasis added), and cite specific harms the members would suffer should particular threatened species be harmed by the challenged logging, a feature absent from the American Lands complaint. Cf. Lujan II, 504 U.S. at 564, 112 S.Ct. 2130 (stating that neither "past exposure" nor an "inten[t]" to return" to a place, without "concrete plans," give plaintiffs standing to litigate allegation that publicly-funded project there threatens wildlife (alteration in original; citation omitted)); Lujan v. Nat'l Wildlife Fed. (Lujan I), 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (holding that an allegation a plaintiff used land "in the vicinity" of a challenged action is insufficiently specific to ground standing). The number of people who regularly use a particular forest is surely limited, not "potentially limitless."

appears, has it agreed as a result of litigation to change its position in any way. To permit preclusion under these circumstances raises substantial policy concerns of another sort, as courts would have to investigate the earlier case sufficiently to assure that it was bona fide.

It is largely because there has been no litigation on the merits, moreover, that this case presents the misleading impression that, absent preclusion, litigants in the position of the present plaintiffs could bring successive challenges to the allegedly invalid timber sales. The federal courts' approach to nonmutual issue preclusion shows that, even in the public-law arena, there is no threat of infinite litigation, because nonmutual preclusion can and must be applied in a manner conducive to judicial economy and fairness to litigants. *Parklane*, 439 U.S. at 326, 331–33, 99 S.Ct. 645. Where there *is* litigation on the merits, stare decisis will run between earlier and later appellate cases touching on the same issues and between appellate cases and later district court cases. *See Pérez–Guzmán*, 346 F.3d at 237. Considerations of comity and persuasiveness, as well as related case rules, *see, e.g.,* D. Or. Local Rule 42.4, and venue requirements, *see* 28 U.S.C. § 1391, make it unlikely that district courts will reach contrary results in cases raising identical challenges. *See United States v. Maine,* 420 U.S. 515, 527, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975) ("[T]he defendant[s] ... were not parties to [earlier suits] ... and they are not precluded by res judicata from litigating the issues decided by those cases. But the doctrine of *stare decisis* is still a powerful force in our jurisprudence."). Moreover, were a litigant seriously concerned about successive litigation by indistinguishable plaintiffs, it could countersue for a declaratory judgment against the class the plaintiff is thought to represent, thereby invoking the class action protections entirely absent here. *See* Fed.R.Civ.P. 23(b).

But here, the Forest Service did nothing of the kind. Nonetheless, the district court relied on a prior dismissal, entered without any litigation on the merits, to foreclose entirely separate litigants from proceeding. I simply do not see how the Service would be unjustly subjected to successive litigation were it required, for the first and only time, to defend its action on the merits in this suit.

## IV. Conclusion

Because the majority proposes a novel preclusion rule that cannot be squared with this court's precedents or well-established principles of due process, I respectfully dissent.