Demond CRAWFORD, et al.,
Plaintiffs–Appellees,

v.

Bill HONIG, et al., Defendants–Appellees.

LARRY P., by his Guardian ad
Litem, LUCILLE P., et al.,
Plaintiffs–Appellants,

v.

Wilson RILES, Superintendent of Public Instruction for the State of California, et al., Defendants–Appellees.

No. 92–16726.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1993.

Decided Sept. 30, 1994.

As Amended on Denial of Rehearing
Jan. 6, 1995.

Margaretta Wan Ling Lin, Public Advocates, Inc., San Francisco, CA, for plaintiffs-appellants.

Barry A. Zolotar, California State Dept. of Educ., Sacramento, CA, for defendants-appellees.

Mark J. Bredemeier, Landmark Legal Foundation, Kansas City, Missouri, Manuel S. Klausner, Los Angeles, CA, for plaintiffs-appellees.

Miriam R. Eisenstein, U.S. Dept. of Justice, Washington, DC, for amicus.

Before: POOLE, BEEZER, and KLEINFELD, Circuit Judges.

POOLE, Circuit Judge:

In this appeal, we consider whether the district court properly vacated the 1986 modification to its 1979 injunction in *Larry P. v. Riles,* 495 F.Supp. 926 (N.D.Cal.1979), *aff'd in part, rev'd in part,* 793 F.2d 969 (9th Cir.1986). The 1979 *Larry P.* injunction banned the use of standardized individual intelligence quotient ("I.Q.") tests to evaluate African–American children for placement in classes for the Educable Mentally Retarded ("E.M.R.") or their "substantial equivalent." The 1986 modification, which was made following a settlement after California abolished the E.M.R. category, banned the use of I.Q. tests to evaluate African–American children referred for any special education assessment.

The plaintiffs in this case ("*Crawford* plaintiffs") are African–American school children who were diagnosed as learning disabled and who sought to have I.Q. tests administered to them. Because the 1986 modification forbade all I.Q. testing of African–American children referred for special education assessment, they were unable to receive the tests. They then filed this action challenging the 1986 modification. The district court consolidated the case with *Larry P.* and vacated the 1986 modification on summary judgment pursuant to Fed.R.Civ.P. 60(b)(4) on the grounds that (1) the *Crawford* plaintiffs' interests were not represented adequately in the 1986 proceedings and (2) insufficient factual foundation supported the modification. The effect of the district court's summary judgment was to vacate the 1986 modification for all African–American school children in California and to leave the original *Larry P.* injunction intact. The district court also ordered supplemental proceedings in *Larry P.* to hear evidence regarding the "substantial equivalent" of E.M.R. classes and directed the *Crawford* plaintiffs to file a motion for sub-class certification if they

wanted to participate in the supplemental *Larry P.* proceedings.

The plaintiffs in the original *Larry P.* class ("*Larry P.* plaintiffs"), the Superintendent of Public Instruction, and the California State Board of Education appeal the district court's summary judgment in favor of the *Crawford* plaintiffs. We affirm.

## I

Because the district court disposed of the entire *Crawford* action, we have jurisdiction over the Department of Education's appeal under 28 U.S.C. § 1291. We also have jurisdiction to review the *Larry P.* plaintiffs' appeal because the dissolution of an injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1).

We review de novo the district court's decision to set aside its 1986 judgment as void under Federal Rule of Civil Procedure 60(b)(4) because "the question of the validity of a judgment is a legal one." *Retail Clerks Union Joint Pension Trust v. Freedom Food Center*, 938 F.2d 136, 137 (9th Cir.1991).[1] We also review de novo the district court's summary judgment. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

## II

Class action suits are representative suits brought on behalf of groups of persons who are similarly situated but who may or may not be parties to the suit. *See generally* Fed.R.Civ.P. 23. Class members who are not parties to a class action suit nevertheless are bound by the judgment in the suit, and due process is satisfied, if the absent members' interests are adequately represented by the class members who are present. *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 118–19, 85 L.Ed. 22 (1940); *see* Fed.R.Civ.P. 23(a)(4) (representative must "fairly and adequately protect the interests of the class"). Adequate representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992) (quotation omitted), *cert. denied*, — U.S. ——, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994).[2]

Here, in vacating the 1986 modification, the district court held that the *Crawford* children were not bound by the 1986 judgment because the *Larry P.* class representative did not adequately represent the *Crawford* children's interest in having I.Q. tests for special education assessment other than E.M.R. placement or its substantial equivalent. The district court then vacated the 1986 modification based on three grounds: (1) the 1986 across-the-board ban on I.Q. tests for placement in special education classes expanded the scope of the 1979 injunction, which banned only the use of I.Q. tests for placement in dead-end E.M.R. classes or their substantial equivalent, (2) the modification was not supported by the factual findings underlying the 1979 *Larry P.* injunction, which addressed the discriminatory effect of I.Q. tests only in the context of placement in E.M.R. classes, and (3) no evidence

---

1. Because we hold that res judicata does not bar the *Crawford* plaintiffs' collateral attack on the 1986 judgment, Rule 60(b)(4) was the appropriate mechanism to raise the collateral attack. *See Silber v. Mabon*, 957 F.2d 697, 700 & n. 3 (9th Cir.1992).

2. Depending on the type of class action suit, due process may require other safeguards in order for absent members to be bound by the judgment. For example, the due process required in order to bind known absent class members in a class action suit for money damages includes adequate notice to the absent members, adequate representation, and an opportunity for the members to opt out of the suit. *Phillips Petroleum Co.*

*v. Shutts*, 472 U.S. 797, 808, 812–14, 105 S.Ct. 2965, 2972, 2974–76, 86 L.Ed.2d 628 (1985). *Larry P.*, however, was a class action for injunctive relief certified under Fed.R.Civ.P. 23(b)(2), which does not require notice or permit members to opt out, although a court in its discretion may provide for an opt-out or notice. *See* Fed.R.Civ.P. 23(b)(2); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 n. 3 (9th Cir.1985). In a Rule 23(b)(2) class action for equitable relief, the due process rights of absent class members generally are satisfied by adequate representation alone. *See Besinga v. United States*, 923 F.2d 133, 137 n. 7 (9th Cir.1991).

was presented, and no findings were. made, during the 1986 proceedings to support the broadening of the ban.

We affirm the district court's decision vacating the 1986 modification.

■ First, the *Larry P.* injunction banned the use of I.Q. tests without prior court approval for placement of African–American students in E.M.R. classes or their "substantial equivalent." The 1986 modification broadened the injunction and prohibited I.Q. testing of all African–American children referred for special education services.

Second, the 1986 modification was not supported by the factual findings in the 1979 proceedings. This is not to say that the district court was not concerned in 1979 with the potentially racist nature of I.Q. testing. This concern is manifest in its extensive discussion of the racial and cultural biases in I.Q. tests and the lack of scientific validation of the tests for culturally and racially different groups. *See Larry P.,* 495 F.Supp. at 935–59, 970–71. But the focus of the district court's inquiry was the disproportionate enrollment of African–American children in dead-end E.M.R. classes, not the use of I.Q. tests generally. *Id.* at 988–89. Indeed, the district court stated that its decision "should not be construed as a final judgment on the scientific validity of intelligence tests" generally and held only that "[w]hatever the general scientific merits of the tests, ... defendants have failed to show a valid, legal justification for their use for black E.M.R. placement." *Id.* at 989.

Third, as the district court observed, no evidence was presented, and no findings were made, during the 1986 proceedings to support the broadening of the ban. Instead, the 1986 modification was made after the *Larry P.* parties filed a "Stipulated Request for Modification of Judgment" requesting the district court to modify the 1979 injunction to prohibit I.Q. testing of all African–American students referred for special education services.

We agree with the district court that this aspect of the 1986 proceedings—expansion of the injunction beyond the scope and contemplation of the 1979 decision through settlement negotiations without notice to absent class members—was troubling. *Cf.* Fed. R.Civ.P. 23(e) ("[a] class action shall not be dismissed or compromised without approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs"). The district court properly determined that the *Crawford* plaintiffs' interests were not represented during the 1986 proceedings and that res judicata did not bar them from collaterally attacking the 1986 proceedings. *See Hansberry,* 311 U.S. at 42–43, 61 S.Ct. at 118–19.

In reaching this holding, we recognize that the 1986 settlement may have seemed appropriate to the parties. By 1986, California had eliminated the E.M.R. category and replaced it with various special education classes with various labels. The variety of labels made it more difficult to identify the "substantial equivalent" of E.M.R. classes and thus made it difficult to enforce the *Larry P.* injunction. The parties doubtless believed that the 1986 settlement was consistent with the 1979 injunction: it prevented I.Q. testing for placement in the substantial equivalent of E.M.R. classes by preventing I.Q. testing for placement in all special education classes. The problem with this approach is that it ignores the district court's holdings in 1979 and in this case that it never considered the usefulness of I.Q. tests to identify learning disabilities other than E.M.R.

■ Accordingly, we affirm the district court's vacation of the 1986 modification and reinstatement of the original injunction. We also affirm the district court's decision with regard to further proceedings in the *Larry P.* case. This decision was appropriate because district courts have continuing jurisdiction to enforce their injunctions. *See System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *see also Larry P.,* 495 F.Supp. at 989 (district court

anticipated that further monitoring and modification of its order might be necessary).

### III

In reaching our decision, we have examined the only issue raised on appeal: the propriety of the district court's 1986 expansion, following a settlement by the *Larry P.* parties, of its 1979 injunction. We affirm the district court's vacation of the 1986 modification, and reinstatement of the original injunction, on the narrow ground that insufficient facts supported the 1986 modification.

We have not decided the underlying issues in this case: the propriety of I.Q. testing for placement of African–American children in special education classes other than E.M.R.-equivalent classes and the arguments that the racist problems with I.Q. tests have been eliminated. These are disputed issues of fact that may be addressed in the supplemental *Larry P.* proceedings.

**AFFIRMED.**