**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HEADWATERS INC., an Oregon nonprofit corporation; FOREST CONSERVATION COUNCIL,<br>*Plaintiffs-Appellants,*<br><br>v.<br><br>U.S. FOREST SERVICE,<br>*Defendant-Appellee.* | No. 01-35898<br>D.C. No.<br>CV-01-03056-HO<br>ORDER WITHDRAWING OPINION AND DENYING PETITION FOR REHEARING WITH PETITION FOR REHEARING EN BANC AND OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, Chief District Judge, Presiding

Argued and Submitted
July 10, 2003—Portland, Oregon

Filed February 23, 2005

Before: Alfred T. Goodwin, Procter Hug, Jr., and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Goodwin

## COUNSEL

Lori J. Cooper, Williams, Oregon, for the appellants.

Todd S. Aagaard, Attorney, United States Department of Justice, Washington, D.C., for the appellee.

## ORDER

The Opinion filed on September 8, 2004, and published at 382 F.3d 1020 (9th Cir. 2004), is withdrawn and superceded by the opinion filed concurrently herewith.

With the filing of the new opinion, appellants' pending petition for rehearing en banc is DENIED as moot, without prejudice to refiling a subsequent petition for rehearing and/or rehearing en banc. *See* 9th Cir. G.O. 5.3(a).

**OPINION**

BERZON, Circuit Judge:

The district court held, *sua sponte*, that two environmental organizations who have never litigated the validity of several timber sales are precluded from doing so because counsel for other organizations, a year earlier, signed a dismissal with prejudice of a similar suit. We have in this nation a " 'deep-rooted historic tradition that everyone should have his own day in court,' " and presume, consequently, that " '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.' " *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (quoting *Martin v. Wilkes*, 490 U.S. 755, 762 (1989)). While there are narrow exceptions to this principle, usually denominated by the term "privity," the district court here applied the privity doctrine without establishing, among other prerequisites, that the present plaintiffs were adequately represented in the prior suit, and without giving plaintiffs an opportunity to demonstrate that they were not. We reverse, and remand for consideration of the preclusion question after full adversary airing and a development of an appropriate record.

## I. Background

On May 13, 1999, six environmental groups and two individuals[1] ("*American Lands* plaintiffs") filed suit against the Forest Service challenging various timber sales, including the Beaver-Newt and Silver Fork timber sales. *American Lands Alliance v. Williams*, No. 99-697-AA (D. Or. 1999). The plaintiffs filed an amended complaint on October 26, 1999,

---

[1]The named plaintiffs were: American Lands Alliance, League of Wilderness Defenders, Oregon Wildlife Federation, Santiam Watershed Guardians, Friends of Breitenbush Cascades, Klamath-Siskiyou Wildlands Center, Gregory J. Dyson, and John Rancher.

which advanced nine claims for relief under the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1687, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370, and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706, challenging nineteen United States Forest Service logging programs in the Willamette, Mt. Hood, Rogue River, and Siskiyou National Forests. The complaint sought declaratory and injunctive relief requiring the Forest Service to complete an environmental impact statement under NEPA and otherwise to comply with NFMA, NEPA, and APA procedural requirements before implementing the logging plans. Both the Beaver-Newt and Silver Fork areas are located within the Rogue River National Forest in southwestern Oregon.

On December 13, 1999, before any developments in the case apart from the filing of a scheduling order and an amended complaint — before, that is, any litigation on the merits — and, as far as the record shows, without receiving any concessions from the defendants, the *American Lands* plaintiffs stipulated to a dismissal of their complaint with prejudice. On January 19, 2000, District Judge Ann Aiken issued the dismissal. The *American Lands* complaint was not denominated a class action, and there is no indication that Judge Aiken reviewed the fairness of the stipulation as it affected third parties.

More than one year later, on February 21, 2001, one of the *American Lands* plaintiffs, the Klamath-Siskiyou Wildlands Center ("Wildlands Center"), represented by a new attorney, filed a new complaint regarding the Beaver-Newt and Silver Fork timber sales, seeking declaratory and injunctive relief under NFMA and NEPA. *Klamath-Siskiyou Wildlands Center v. United States Forest Serv.*, No. 01-3018-HO (D. Or. 2001). The Forest Service moved for judgment on the pleadings based upon *res judicata*, because of the Wildlands Center's participation in the *American Lands* suit. In response, on June 1, 2001, the Wildlands Center filed a motion for relief from

the judgment, conceding that *res judicata* would bar the lawsuit but arguing that the court should grant relief from the *American Lands* judgment pursuant to Federal Rule of Civil Procedure 60(b). The Wildlands Center's motion alleged that the attorney in the *American Lands* suit did not have authority to enter into the settlement agreement. On July 2, 2001, Judge Michael Hogan granted the Forest Service's motion for judgment on the pleadings in *Klamath-Siskiyou* and dismissed the action without prejudice. The Wildlands Center did not appeal that judgment.

The present record is silent as to when the plaintiffs here ("Headwaters")[2] learned of the *American Lands* and *Klamath-Siskiyou* litigation. On July 5, 2001, three days after Judge Hogan dismissed the Wildlands Center's lawsuit, Headwaters instigated suit in the same district court in which the *American Lands* and *Klamath-Siskiyou* suits had been filed, using the same lawyer and a similar complaint as in *Klamath-Siskiyou* (but not as in *American Lands*). The current complaint challenges the Beaver-Newt and Silver Fork timber sales, the same two sales challenged by the Wildlands Center in *Klamath-Siskiyou*; alleges, differently than did the *American Lands* complaint, the plaintiffs' interest in and use of the forests; and relates its claims to particular endangered species, which the *American Lands* complaint did not do. On July 26, 2001, Judge Hogan, to whom the present case was also assigned, dismissed the Headwaters complaint *sua sponte* under the *res judicata* doctrine. *Headwaters, Inc. v. United States Forest Serv.,* 159 F. Supp. 2d 1253, 1258 (D. Or. 2001). He neither held a hearing nor received any briefing on either the merits of the case or the applicability of *res judicata*.[3] *Id.* Headwaters appeals.

---

[2]There are two plaintiffs in this case, Headwaters, Inc. and the Forest Conservation Council. The record indicates that Headwaters, but not the Council, has been a co-plaintiff with the Klamath-Siskiyou Wildlands Center in unrelated litigation, *Headwaters, Inc. v. Bureau of Land Mgmt.*, No. 01-3063 (D. Or.).

[3]The record in this case is silent on what happened next, but we may take judicial notice of the *American Lands* docket, which shows that all

A district court's judgment based upon *res judicata* is a mixed question of law and fact in which legal issues predominate. Accordingly, we review the district court's order de novo. *See Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998); *United States v. Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir. 1984).

## II.  Discussion

**[1]** "The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action," and "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (internal quotation marks omitted). The elements necessary to establish *res judicata* are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (quotation marks and citation omitted); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). We shall discuss each element in turn, but, as we shall explain, the central issue is whether, as required to find privity, Headwaters was adequately represented in the earlier litigation.

## A.  Identity of Claims

In determining whether a present dispute concerns the same claims as did prior litigation, the Ninth Circuit considers:

---

the original plaintiffs in that case filed a motion for relief from the earlier dismissal on July 9, 2001, four days after the *Headwaters* complaint was filed. *See Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice."). The *American Lands* plaintiffs withdrew that motion on August 9, 2001, after the district court's *sua sponte* dismissal of this case.

(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (internal citation omitted).

**[2]** Headwaters' complaint alleges an infringement of the same right and arises out of the same nucleus of facts present in both the *American Lands* and *Klamath-Siskiyou* litigation. The complaint in this case challenges the timber sales on the grounds that the Forest Service violated NEPA, NFMA, and the APA. All three of these claims were present in the prior suits. Further, the Beaver-Newt and Silver Fork timber sales are part of the underlying "nucleus of facts" that forms the basis for all three of these suits. Accordingly, an identity of claims exists.

## B.   Final Judgment on the Merits

**[3]** The district court in *American Lands* entered a final judgment when it dismissed the action with prejudice pursuant to the stipulated dismissal. We have held that a stipulated dismissal of an action with prejudice in a federal district court generally constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action in the same court. *See Concha v. London*, 62 F.3d 1493, 1507-08 (9th Cir. 1995).[4]

---

[4]We note that a stipulated dismissal "with prejudice" under Rule 41 of the Federal Rules of Civil Procedure may not have *res judicata* effect, even for the named parties in that suit, in another court. In *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme

## C.  Privity

### 1.  General principles

**[4]** " 'Privity' . . . is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *Schimmels*, 127 F.3d at 881 (quoting *Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)). Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly: co-owners and co-tenants of property; decedents and their heirs, successors in interest and survival claimants; bailors and bailees; joint obligees; assignors and assignees; parties to a contract, and in some cases promisees and third-party beneficiaries; indemnitors and indemnitees; corporations and their officers or shareholders; partners and their partnerships; and unincorporated associations and their members. *See* RESTATEMENT (SECOND) OF JUDGMENTS, §§ 43-61 (1982); *see also* FED. R. CIV. P. 23.2 (governing actions affecting associations).

However, "the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." *Richards*, 517

---

Court noted that although such dismissals are commonly denominated adjudications "on the merits," only a judgment that "actually passes directly on the substance of a particular claim before the court . . . triggers the doctrine of *res judicata* or claim preclusion." *Id.* at 501-02 (alterations and citation omitted). Consequently, a dismissal with prejudice in federal court "bar[s] refiling of the same claim in" the same district court, but is only "a necessary condition, not a sufficient one, for claim-preclusive effect in other courts." *Id.* at 506. As this case was filed in the same district court as the one claimed to be preclusive, however, the otherwise important distinction made in *Semtek* is not pertinent to this prong of the inquiry.

U.S. at 798. *Richards* cited two sources for this statement: the Restatement (Second) of Judgments and *Martin v. Wilks*, 490 U.S. 755 (1989). The former adds to the traditional privity categories circumstances in which "[a] person who is not a party to an action . . . is represented by a party," including trustees and beneficiaries, other fiduciary relationships and consensual or legal representational relationships, and "[t]he representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member." RESTATEMENT (SECOND) OF JUDGMENTS § 41(1). *Martin*, in the portion quoted in *Richards*, adds "certain limited circumstances [in which] a person, although not a party, has his interests adequately represented by someone with the same interests who is a party," including " 'class' or 'representative' suits" and "control of litigation on behalf of one of the parties in the litigation," as well as "special remedial scheme[s] . . . expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate." 490 U.S. at 762 n.2.

**[5]** *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004), recently summarized the amalgam of circumstances, broader than traditional privity relationships, that have been referred to in our cases as "virtual representation."[5] "A non-party can be bound

---

[5]Trenchant opinions from other circuits in recent years have questioned the utility of the term "virtual representation" and the concepts it has encompassed, especially in light of the Supreme Court's analysis in *Richards*. *See Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 422-24 (6th Cir. 1999) (en banc); *id.* at 431-32 (Moore, J., concurring in the judgment); *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 966 (7th Cir. 1998); *Bittinger v. Tecumseh Prods.*, 123 F.3d 877, 880-82 (6th Cir. 1997); *see also Tyus v. Schoemehl*, 93 F.3d 449, 458-59 (8th Cir. 1996) (Henley, J., concurring in result). Judge Wood has written for the Seventh Circuit that the "virtual representation" concept is "amorphous," "illustrates the harm that can be done when a catchy phrase is used to describe a perfectly sensible result," and "cast[s] more shadows than light on the problem to be decided." *Tice*, 162 F.3d at 970-71. For present purposes, however, we use the term as it is used in *Irwin* — to capture the factors that, in addition to traditional privity relationships, justify the preclusion in later litigation of parties not of record in an earlier case.

by the litigation choices made by his virtual representative," *id.* at 929, only if certain criteria are met: "[A] close relationship, substantial participation, and tactical maneuvering all support a finding of virtual representation; identity of interests and adequate representation are necessary to such a finding." *Id.* at 930.

**[6]** As this summary indicates, parallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff. *See Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000) (refusing to find privity where the former and present litigants shared only "an abstract interest in enforcement" of the same legal requirement) (quoting *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980)); *see also Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998).

### 2. *Adequacy of Representation*

**[7]** *Richards* holds that adequate representation is a due process prerequisite to precluding a litigant from his day in court if he was not a party to the earlier litigation. 517 U.S. at 800-01. We understand *Irwin*'s adequate representation prong, *see* 370 F.3d at 930, as subsuming *Richards*'s due process requirements.

*Richards* considered a taxpayer class action challenging a county tax on federal constitutional grounds. The county claimed Richards's suit was precluded by an earlier case in which the city of Birmingham and three other taxpayers (not claiming to represent a class) litigated and lost a state-law challenge to the tax. The Court rejected this argument, emphasizing that the prior individual plaintiffs gave no notice to Richards's class that they intended to represent and litigate on behalf of the class, *id.* at 799, and that there was no indication the court hearing the first case "took care to protect the interests of" the *Richards* plaintiffs. *Id.* at 802. Thus, "to con-

tend that the plaintiffs in [the earlier litigation] somehow represented petitioners, let alone represented them in a constitutionally adequate manner, would be 'to attribute to them a power that it cannot be said that they had assumed to exercise.' " *Id.* at 802 (quoting *Hansberry v. Lee*, 311 U.S. 32, 46 (1940)). As the two sets of plaintiffs were otherwise "best described as mere strangers to one another," the Court was "unable to conclude that the [earlier] plaintiffs provided representation sufficient to make up for the fact that [the later plaintiffs] neither participated in, nor had the opportunity to participate in, the [earlier] action." *Id.* (citations and internal quotation marks omitted).

**[8]** The district court noted, as one reason for finding that Headwaters had been adequately represented, that the plaintiffs in both cases seek "vindication of the public right to require" a federal agency to follow federal law. We reject the invitation to craft a "public right" exception to the due process requirement of adequate representation. *Richards* itself involved a question that pertained to all taxpayers, and the public nature of that question did not lead the Supreme Court to create an exception to its adequate representation holding.

### 3.   Sua Sponte *Dismissal*

**[9]** As our discussion to this point indicates, the requisites for finding nontraditional forms of privity, outlined in *Irwin,* are not readily determined from pleadings. For that reason, *sua sponte* dismissal of subsequent actions such as this one, filed by parties not involved in the prior litigation, is not appropriate.

**[10]** As a general matter, a court may, *sua sponte*, dismiss a case on preclusion grounds "where the records of that court show that a previous action covering the same subject matter *and parties* had been dismissed." *Evarts v. W. Metal Finishing Co.*, 253 F.2d 637, 639 n.1 (9th Cir. 1958) (emphasis added). However, "[w]here no judicial resources have been

spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication." *Arizona v. California*, 530 U.S. 392, 412-13 (2000). Our research failed to find a single case in which this court has upheld a dismissal for claim or issue preclusion where the parties were not given any opportunity to be heard on the issue.[6]

Here, of course, the parties were not the same, and the problem is not simply that no argument was permitted but that the pertinent facts necessary to make a privity determination, outlined above, were not investigated. The district court's order of dismissal recounted only the following pertinent facts: That it had heard argument in a "similar case," *Klamath-Siskiyou*; that Headwaters had hired the Wildlands Center's attorney; that the Headwaters complaint contained "virtually identical claims" as the Wildlands Center's; and that the parties in the earlier cases were seeking to litigate

---

[6]For example, in *McClain v. Apodaca*, 793 F.2d 1031, 1032-33 (9th Cir. 1986), we affirmed a dismissal entered after the parties filed post-trial briefs on a *res judicata* question initially raised by the bankruptcy court. Similarly, in *Hawkins v. Risley*, 984 F.2d 321 (9th Cir. 1993) (per curiam), we affirmed a dismissal after the parties had "adequate opportunity to examine and contest the application of preclusion" before the district court. *Id.* at 324. Conversely, in *Nevada Employees Ass'n v. Keating*, 903 F.2d 1223 (9th Cir. 1990), we reversed because, by not allowing briefing on the issue, "the trial court did not subject its *res judicata* decision to the rigors of the adversarial process." *Id.* at 1225; *see also Favish,* 217 F.3d at 1171 (noting that district court raised collateral estoppel *sua sponte* but provided the parties an opportunity to argue); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1157 (9th Cir. 2000) (instructing that, on remand, the parties could litigate a collateral estoppel problem first raised by the district court). The closest we have come to endorsing a *sua sponte res judicata* dismissal was in *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800 (9th Cir. 1995). Even there, while we affirmed a *sua sponte* summary judgment in favor of a nonappearing defendant based on collateral estoppel, we rested our opinion on the fact that the parties who lost on summary judgment had been provided an opportunity to present arguments against the application of preclusion. *Id.* at 803.

" 'not . . . any interests peculiar to themselves, but . . . the public right to require Forest Service compliance with NEPA [and the NFMA]' " (quoting *Sierra Club v. Block*, 576 F. Supp. 959, 966 (D. Or. 1983)) (alteration in original). From those considerations alone, the district court concluded that "[t]he elements of *res judicata* are satisfied."

**[11]** The considerations recited by the district court are insufficient, standing alone, to justify its conclusion. Instead, the pertinent "virtual representation" privity factors, outlined in *Irwin*, require factual development beyond the bare record. *Sua sponte* dismissal was thus inappropriate.

Of supervening importance, as the consideration is mandatory, *see Irwin*, 370 F.3d at 930, and likely to be determinative, there is no record before us concerning adequate representation considerations. Without factual development, there is no way to determine whether the adequate representation/due process requirements, discussed above, were met here. We do not know whether Headwaters had notice of the earlier suits while they were pending.[7] Moreover, it appears that the *American Lands* suit was dismissed with prejudice without any consideration by the court of the issue Headwaters now seeks to raise. *See Richards*, 517 U.S. at 800-01 (noting that ordinarily absent parties must have notice of an earlier suit that could resolve their legal rights, and that, while

> adequate representation might cure a lack of notice . . . . a prior proceeding, to have a binding effect on absent parties, would at least have to be 'so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.

---

[7]We do not suggest that notice alone would be sufficient to demonstrate adequate representation. *See Martin*, 490 U.S. at 762-63.

(quoting *Hansberry*, 311 U.S. at 43)).

In addition to the fact that the common issue never was considered by the court in the prior litigation, there is nothing else in the current record to indicate that *American Lands* was structured so as to protect "strangers" to that case. *See Hansberry,* 311 U.S. at 43, *quoted in Richards*, 517 U.S. at 801. As in *Richards*, the *American Lands* litigation was not a class action, even putatively.[8] As a result, the district court in the earlier case did not provide any safeguards to assure that all parties potentially affected by the judgment were adequately represented, as would be the case were certification of a class sought. *See* FED. R. CIV. P. 23(a)(4); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994). Also, there is no indication in the present record that the plaintiffs in the original suit thought they were representing anyone other than themselves and their members. Nor was there, as far as it appears, any notice to any absent party of the proposed "settlement," or any indication that the district court in the prior litigation approved the stipulation of dismissal as fair to absent parties affected, as would have been the case had the suit proceeded as a class action. *See* FED. R. CIV. P. 23(e); *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Under these circumstances, the district court could not determine, *sua sponte* and with no factual record, that the *American Lands* plaintiffs were adequately representing Headwaters, virtually or otherwise.

---

[8]In *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir. 1979), we held that an earlier case, although not formally certified under Rule 23, "was brought as a class action and treated by the court as a class action," and so entitled to preclusive effect against members of the de facto class. *Id.* at 1126. This case does not meet the *Jackson* criteria, as it was neither filed nor treated as a class action. Further, it is not clear that *Jackson* is still good law after *Richards*. *See Tice*, 162 F.3d at 972-73 (holding, after *Richards*, that "[u]nless there is a *properly certified* class action . . . normal privity analysis must govern whether nonparties to an earlier case can be bound to the result" (emphasis added)).

Furthermore, the district court appears to have inferred that Headwaters and the Wildlands Center have close organizational ties, based only on the fact that the two are co-plaintiffs in a separate lawsuit. There is no record support for this inference. We know nothing else about the relationship between the present plaintiffs and the former ones, such as whether Headwaters and the Wildlands Center have overlapping officers. Without that information, we cannot evaluate the "close relationship" prong of this circuit's virtual representation/ privity analysis, as articulated in *Irwin*. Nor is there any record concerning whether the present plaintiffs had any role in the prior litigation.

There is one final reason s*ua sponte* dismissal was inappropriate: Judicial resources had not been expended on the merits of the litigation. As noted above, the *American Lands* plaintiffs stipulated to a dismissal of their case before any litigation on the merits — or, for that matter, any litigation activity besides filing of a scheduling order and an amended complaint — occurred. The Wildlands Center's litigation was dismissed on its pleadings based on the plaintiff's involvement in the *American Lands* litigation. No judicial resources have been spent resolving the legality of the Beaver-Newt and Silver Fork timber sales, rendering negligible the public interest underlying *res judicata*. *See Arizona*, 530 U.S. at 412.

## III. Conclusion

**[12]** We do not prejudge the outcome of the *res judicata* issue in this case. Instead, we reverse the *sua sponte* dismissal and remand to the district court for full consideration of the question, in accord with this opinion, after an opportunity for full briefing and argument and for appropriate factual development. REVERSED and REMANDED.

GOODWIN, Circuit Judge, concurring separately:

I concur in the majority opinion, but write separately to remind the district court on remand that if the factual record developed after remand shows that a party or counsel were, as suspected by the district court, in fact gaming the system to prolong unnecessary litigation, the court has discretionary remedies in the nature of costs and fees to protect the court from imposition.