FERNANDEZ, Circuit Judge,
Dissenting:
As I see it, the final agency action took place when the Forest Service issued the permits to allow grazing by certain numbers of livestock for certain periods on designated land allotments.[1] Those permits themselves provided for the possibility of cancellation or suspension. More than that, they provided for periodic changes and adjustments, as needed, for resource protection — for example, adjustment of the grazing season by changing the dates of entry and the dates of removal. In other words, the permits contemplated that the Forest Service would give instructions from time to time in order to assure that grazing was conducted in accordance with law and in a way that did not unduly damage the land itself. As relevant here, that was accomplished through the use of AOIs. Typically those are negotiated documents wherein the per-mitees agree with the Forest Service about the proper use of the land. The AOIs, themselves, are subject to change during the grazing season, if that becomes desirable. Instructions under the permits also reach the permitees by on-the-spot comments by Forest Service personnel or by telephone.
ONDA claims that each AOI is a final agency action for the purposes of APA review. The Forest Service claims that the instructions are mere management tools and amount to documents which implement the permits themselves. Which one is correct? The Forest Service. In reaching that conclusion, I cannot ignore the fact that the Forest Service itself believes that all it is doing is implementing the permit provisions. While I recognize that we are not bound by the Forest Service’s opinions about what it is doing when it uses AOIs,[2] its “own characterization of its action ... provides an indication of the nature of the action.” City of San Diego v. Whitman, 242 F.3d 1097, 1101 n. 6 (9th Cir.2001); see also Blincoe v. FAA, 37 F.3d 462, 464 (9th Cir.1994) (per curiam) (agency characterization not determinative, but relevant).
The Supreme Court has stated that when we make a decision about whether there is final agency action, we must consider whether an action marks the “consummation of the agency’s decisionmaking process,” and whether it is “one by which rights or obligations have been determined, or from which legal consequences will flow.” Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (internal quotation marks omitted). In that sense, it can be argued that each AOI, no matter how trivially it affects *991 the actual grazing of animals under the permit, is final agency action. Surely, in some sense it is at least a temporary consummation of the Forest Service’s process of deciding (in conjunction with the permi-tees) what steps should be taken to protect the resources while the animals graze upon the land. Moreover, because a violation of a duly issued AOI can subject the permitee to charges and perhaps sanctions, there can be legal consequences if the AOIs are not adhered to.
But to stop there is, I believe, a bit too formalistic because, in a sense, every step by an agency or by a permitee is the result of a then final decision and can have legal, as well as physical, consequences. Thus, a somewhat narrower and more pragmatic approach is required. See Abbott Labs. v. Gardner, 387 U.S. 136, 149-50, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).
That approach leads to the implementation concept. However final an action might look on its face, if it is merely implementing an earlier truly final determination, it is not final action for APA review purposes. See Mont. Wilderness Ass’n, Inc. v. U.S. Forest Serv., 314 F.3d 1146, 1150 (9th Cir.2003), vacated on other grounds by Blue Ribbon Coal. Inc. v. Mont. Wilderness Ass’n, Inc., 542 U.S. 917, 124 S.Ct. 2870, 159 L.Ed.2d 774 (2004); Chem. Weapons Working Group, Inc. v. U.S. Dep’t of the Army, 111 F.3d 1485, 1494 (10th Cir.1997); see also Lujan v. Nat’l Wildlife Fed’n, 497 U.S. 871, 890, 899, 110 S.Ct. 3177, 3189, 3194, 111 L.Ed.2d 695 (1990) (under APA, courts do not review mere day-to-day operations of an agency). That, of course, makes a good deal of sense. Courts are usually dealing with the front end of the process and ask if the agency has finished its consideration of a proposed action — like issuing grazing permits. But implementation is at the back end of the process when an agency decides what will be done to assure that the action taken is carried out as contemplated — for example, how will the grazing permits be utilized so that livestock gets fed and resources get protected?
In other words, the AOIs are merely a way' of conducting the grazing program that was already authorized and decided upon when the permits were issued. The AOIs reflect nothing more sophisticated or final than the “continuing (and thus constantly changing) operations”[3] of the Forest Service in reviewing the conditions of the land and its resources, and assuring that the mandated grazing programs go forward without undue disruption of the resource itself. Whether the decisions are by AOIs, or by phone calls, or by encounters in the field, or otherwise, they merely address day-to-day resource management and feeding of livestock. Review of that sort of decision is not contemplated by the APA. In fact, the Supreme Court has frowned upon broad programmatic attacks on agency action because, among other things, those would empower courts “to determine whether compliance was achieved — which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting -the judge into day-today agency management.” Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66-67, 124 S.Ct. 2373, 2381, 159 L.Ed.2d 137 (2004). That, of necessity, leads to a final reason that we should not accept ONDA’s position.
In pragmatic terms, if every AOI for every permit in every allotment every year is to be open to litigation by ONDA, and others,[4] it is a little difficult to see how the *992 grazing program can continue, if the purpose of the program is to feed animals. They need to eat now rather than at the end of some lengthy court process. But, I fear that what is really afoot is an attack by ONDA on the whole grazing program. That is no mystery — ONDA asked that the land be set aside for twenty to thirty years. It is also no mystery that broad attacks of that sort are neither within the purpose nor a proper use of APA review. See S. Utah Wilderness Alliance, 542 U.S. at 64, 124 S.Ct. at 2379-80; Nat’l Wildlife Fed’n, 497 U.S. at 891, 110 S.Ct. at 3190. I do not think that we should let ourselves be ensnared by ONDA’s little springe.
Thus, I respectfully dissent.

. The issuance of the permits did constitute final agency action. See 5 U.S.C. § 551(13); Idaho Watersheds Project v. Hahn, 307 F.3d 815, 828 (9th Cir.2002); Anchustegui v. Dep’t of Agric., 257 F.3d 1124, 1129 (9th Cir.2001).

. See Abramowitz v. U.S. EPA, 832 F.2d 1071, 1075 (9th Cir.1987), superseded by statute on other grounds as recognized in Hall v. U.S. EPA, 273 F.3d 1146, 1159 (9th Cir.2001).

. Nat’l Wildlife Fed’n, 497 U.S. at 890, 110 S.Ct. at 3189.

. They may do so seriatim. See Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1050 (9th Cir.2005).