ROOSEVELT IRRIGATION DISTRICT, a political subdivision of the State of Arizona, Plaintiff,

v.

SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, et al., Defendants.

No. 2:10–CV–00290 DAE–BGM.

United States District Court, D. Arizona.

Signed Aug. 19, 2014.

Andrew S. Friedman, Francis Joseph Balint, Jr., Jerry C. Bonnett, Andrew Q. Everroad, Bonnett Fairbourn Friedman & Balint PC, Phoenix, AZ, for Plaintiff.

Lea Alexandra Phillips, Craig Carson Hoffman, David John Armstrong, Ballard Spahr LLP, Phoenix, AZ, for Defendants.

## ORDER DENYING DEFENDANT REYNOLDS METALS COMPANY'S MOTION TO DISMISS

DAVID ALAN EZRA, Senior District Judge.

On July 29, 2014, the Court heard Defendant Reynolds Metals Company's ("Reynolds") Motion to Dismiss Plaintiff Roosevelt Irrigation District's ("RID") Third Amended Complaint. (Dkt. # 813.) Jerry C. Bonnett and Francis J. Balint, Jr., Esqs., appeared at the hearing on behalf of the Plaintiff; Matthew G. Ball, Esq., appeared on behalf of Reynolds. After reviewing the motion and the supporting and opposing memoranda, and after considering the parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES** Reynolds' motion.

### BACKGROUND

This is a cost recovery action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq. ("CERCLA") whereby RID seeks to recuperate the costs it has or will incur in responding to the contamination of its wells and to recover for damages to RID property. RID is a political subdivision of the State of Arizona, and it owns multiple groundwater wells in the western portion of Maricopa County, Arizona, used to provide water to public and private entities and individuals. ("TAC," Dkt. # 789 ¶¶ 7, 9, 38.) RID cur-

rently pumps groundwater from its wells and transports it through a network of canals for agricultural, landscape watering, and municipal use on land located within the District. (*Id.* ¶ 39.)

Over twenty of RID's groundwater wells have been impacted by hazardous substances known as chlorinated volatile organic compounds ("VOC Contaminants" or "VOCs"). (*Id.* ¶ 40.) These VOCs include, but are not limited to, trichloroethene ("TCE"), also known as trichloroethylene, tetrachloroethene ("PCE"); 1, 1, 1–trichloroethane ("TCA"); 1, 1–dichloroethane ("1, 1–DCA"); 1, 1–dichoroethene ("1, 1–DCE"); 1, 2–dichloroethane ("1, 2–DCA"); and cis–1, 2–dichloroethene ("cis–1, 2–DCE").[1] (*Id.* ¶ 40.) These VOC contaminants are designated as "hazardous substances" under CERCLA and are considered by the Environmental Protection Agency ("EPA") to be severely harmful to human health and the environment. (*Id.* ¶ 41.) Although not all of RID's groundwater wells have been impacted by the VOC Contaminants, RID contends they are threatened by the same substances. (*Id.*)

RID did not release any of the VOC Contaminants into its groundwater wells. Rather, the hazardous substances in and threatening RID's groundwater wells are the result of releases from facilities owned or operated by other parties and the flow of VOC Contaminants into and within the groundwater supplying RID's wells. (*Id.* ¶ 41.)

On May 1, 2014, RID filed a Third Amended Complaint naming Reynolds as a defendant for the first time. (Dkt. # 813 at 2; TAC ¶ 7.) Previously, RID named Alcoa Inc. ("Alcoa") as a defendant. Alcoa is the parent corporation of Reynolds.

(*Id.*) Alcoa has moved to dismiss, arguing that RID's claims against Alcoa almost entirely pertain to Reynolds' alleged actions and cannot succeed because Reynolds is a separate entity and RID has not plead that it is appropriate to pierce the corporate veil. (*See* Dkt. # 732 at 15.)

After RID added Reynolds as a Defendant, Reynolds filed the instant Motion to Dismiss. Reynolds argues that RID's claims against it are barred for three reasons: (1) as a political subdivision of the State, RID is subject to the Consent Decree between Reynolds and the State and the covenant not to sue therein; (2) the Consent Decree releases Reynolds from further liability to both the "State" and "any other person" for "Covered Matters," which is broadly defined and includes RID's claims; and (3) RID's claims are barred by the doctrine of res judicata. (Dkt. # 813 at 1.)

## REQUEST FOR JUDICIAL NOTICE

■ First, the Court grants Reynolds' Request for Judicial Notice. A Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001). Thus, the Court takes judicial notice of: (1) the October 2, 2002 Consent Decree entered into between Reynolds and the State of Arizona and the Arizona Department of Environmental Quality ("ADEQ") pertaining to Reynolds' alleged activities within the West Van Buren Area Water Quality Assurance Revolving Fund Site ("WVBA WQARF Site"); and (2) the January 6, 2005 Letter of Satisfaction to Reynolds in relation to Reynolds' obligations under the Consent

---

1. In the 1950s and '60s, extensive industrial usage of chlorinated organic solvents such as PCE and TCE was widespread until the use of these compounds raised human health and environmental concerns in the 1970s and 1980s.

Decree. An order of the court, the Consent Decree is appropriate for judicial notice; the Letter of Satisfaction is a record created by. the ADEQ, an administrative body of the State of Arizona, and is also appropriate for judicial notice.

## ANALYSIS

### I. Barred Claims Under the Consent Decree

The 2002 Consent Decree entered into between the State, the ADEQ, and Reynolds "resolve[d] Reynolds' liability for claims of causes of action the State and any other person may have against Reynolds regarding Covered Matters." (Dkt. # 825, "Consent Dec.," Ex. A at 5.) Pursuant to the court-approved Consent Decree, Reynolds agreed to engage in monitoring activities and pay the State a sum of $1,956,474.00; the State, in exchange, gave Reynolds a covenant not to sue and a release for claims by the State and any other person for "Covered Matters." (Dkt. # 813 at 3; Consent Dec. at 12.)

The relevant provisions of the Consent Decree are provided. First, under the "Purpose" section of the Consent Decree, it provides that the purposes of the Consent Decree include: "To protect Reynolds against claims *by any party or other person* by providing a covenant not to sue and contribution protection to Reynolds regarding Covered Matters." (Consent Dec. at 5 (emphasis added).) Further, under the Purpose section, it is provided that:

> The Parties agree that this settlement resolves Reynolds' liability for claims or causes of action *the State and any other person may have against Reynolds* regarding Covered Matters. The intent of the Parties is that, unless otherwise provided by this Consent Decree, *Reynolds will receive a covenant not to sue and contribution protection under CERCLA and WQARF to the fullest extent allowed by law.*

(*Id.* at 5–6 (emphases added).) However, the Consent Decree makes clear that it does not resolve Reynolds' liability for matters not covered by the Consent Decree. (*Id.* at 6.) "Covered Matters," in relevant part, are as follows:

> "Covered Matters" shall mean any civil liability Reynolds may have under CERCLA or WQARF to perform groundwater Remedial Actions as defined in CERCLA and WQARF or for costs incurred by the State and *any civil cause of action that any person may claim under federal or state law to seek contribution* from Reynolds in response to a release or threatened release of hazardous substances at, in, into or from the Facility to any aquifer or the groundwater. "Covered Matters" shall include claims for performance of any past or future CERCLA response actions ... "Covered Matters" shall include all demands, claims and causes of action for natural resource injuries, damages, costs, and assessments ... whether or not such injuries, damages, costs, or assessments have been incurred in the past, exist now, or may exist in the future, arising out of the release, or threatened release of hazardous substances at, to or from the Facility.

(*Id.* at 7 (emphases added).)

In construing consent decrees, courts apply contract principles and the contract law of the state applies. *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir.1990). "Courts must find the meaning of a consent decree 'within its four corners.'" *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir.1996).

### A. Is RID a Part of the "State?"

Reynolds first argues that RID falls within the scope of the term "State" as provided for in the Consent Decree and, thus, RID is bound by the covenant not to sue Reynolds for "Covered Matters." (Dkt. # 813 at 6.)

■ It is undisputed that RID is a political subdivision of the State. (TAC ¶ 7.) However, RID argues that (1) there is no language in the Consent Decree itself that the Decree was intended to be binding upon political subdivisions, and (2) Reynolds cites no authority for the proposition that merely by virtue of being a "political subdivision" of the State, such political subdivisions are bound by agreements and judgments to which the State is a party. (Dkt. # 815 at 4.) The Court agrees with RID.

Nothing in the Consent Decree defines "State" as to include the State and all political subdivisions of the State. Although a definition of "State" is not provided for in the "Definitions" Section of the Consent Decree, the first Recital states: "Whereas, the State of Arizona, on its own behalf and on behalf of the Director of the Arizona Department of Environmental Quality ("State") had filed a Complaint in this matter...." (Consent Dec. at 1.) Nothing in the Consent Decree infers that the term "State" refers to the State of Arizona *and* all political subdivisions of it, but rather refers simply to the State of Arizona.

Moreover, the cases cited by Reynolds do not support its proposition that RID is part of the State as that term is used in the Consent Decree. Reynolds first cites *Fireman's Fund Ins. Co. v. City of Lodi, Cal.,* 302 F.3d 928, 942 (9th Cir.2002), which merely stands for the proposition that the CERCLA savings clauses refer only to "State[s]" while CERCLA specifically refers to both states and political subdivisions in other provisions. *Id.* The fact that CERCLA may, in some provisions, refer to the state as including political subdivisions does not support Reynolds' argument that RID is considered part of the State as that term is used in the Consent Decree.

Reynolds also cites *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.,* 994 F.Supp.2d 1082, 1086–87 (E.D.Cal. 2014), in support of its proposition. However, in *Carolina,* the court simply stated that neither the Supreme Court nor the Ninth Circuit has explicitly addressed whether CERCLA's use of that term "State" encompasses political subdivisions of the state in ultimately concluding that the plaintiff's alleged settlement with the City and/or County of Sacramento was sufficient to demonstrate that it "resolved its liability to ... the state" pursuant to contribution section of CERCLA, § 113(f). *Id.* at 1087 n. 2. Again, this does not support Reynolds' proposition that the term "State," as used in the Consent Decree, includes political subdivisions such as RID.

### B. Is RID considered a "person?"

Next, Reynolds argues that RID is a "person" as that term is used in the Consent Decree and, thus, is subject to the Consent Decree's protection against any claims by a person. (Dkt. # 813 at 6.) As set forth above, the purpose of the Consent Decree provides that: "To protect Reynolds against claims *by any party or other person* by providing a covenant not to sue and contribution protection to Reynolds regarding Covered Matters." (Consent Dec. at 5 (emphasis added).) Specifically, the Consent Decree provides: The Parties agree that this settlement resolves Reynolds' liability "for claims or causes of action *the State and any other person* may

have against Reynolds regarding Covered Matters." (*Id.* (emphasis added).)

The term "person" is not defined by the Consent Decree. The CERCLA definition of "person," however, means "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, *political subdivision of a State*, or any interstate body." 42 U.S.C. § 9601(21) (emphasis added).

■ RID's arguments in its response support a finding that RID is considered a "person" for purposes of the Consent Decree. For example, RID cites Article XIII, § 5 of the Arizona Constitution which grants to municipal corporations the right to engage in business or enterprise, and also cites to A.R.S. § 48–2901, which provides that irrigation districts are municipal corporations for all purposes. (Dkt. # 815 at 5.) In fact, A.R.S. § 48–2982 grants municipal corporations the right to sue and be sued. Indeed, RID states in its response that RID is a "person." (*Id.* "RID, like any other *person* or entity...." (emphasis added).) The Court, likewise, finds no reason that RID is not a "person" for purposes of the Consent Decree.[2]

However, concluding that RID is a "person" pursuant to the Consent Decree does not end the inquiry; rather, the Consent Decree protects Reynolds from "liability for claims or causes of action the State and any other person may have against Reynolds *regarding Covered Matters*." (Consent Dec. at 5.) Thus, the Court must next decide whether RID's CERCLA § 107(a) cost-recovery claim falls under the Consent Decree's "Covered Matters."

**C. *Is RID's Claim a "Covered Matter?"***

Having concluded that RID is a "person" and the Consent Decree protects Reynolds against claims by "any party *or other person* by providing a covenant not to sue and contribution protection to Reynolds regarding Covered Matters," (Consent Dec. at 5 (emphasis added)), the Court must next decide whether RID's CERCLA § 107 cost-recovery claim is a "Covered Matter."

The Consent Decree provided that "Covered Matters" included:

> [A]ny civil liability Reynolds may have under CERCLA or WQARF *to perform* groundwater Remedial Actions as defined in CERCLA and WQARF or for costs incurred by the State *and any civil cause of action that any person may claim under federal or state law to seek contribution from Reynolds in response to a release* or threatened release of hazardous substances at, in, into or from the Facility to any aquifer or the groundwater.

(Consent Dec. at 7 (emphases added).) "Covered Matters" also included "claims for performance of any past or future CERCLA response actions." (*Id.*) RID's § 107 cost-recovery claim asserted against Reynolds for recoupment of its costs in responding to releases of hazardous substances into the groundwater from which RID draws its groundwater is not a claim for contribution, nor is it a "claim[ ] for performance of ... CERCLA response actions."

RID cites *Ford Motor Co. v. Mich. Consol. Gas. Co.*, 993 F.Supp.2d 693 (E.D.Mich.2014) for the proposition that

---

**2.** In fact, municipal corporations are frequently treated as "persons." *See, e.g., Owen v. City of Independence, Mo.*, 445 U.S. 622, 638–39, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (citing the *Monell* standard of municipal liability and stating that "municipalities, like private corporations—were treated as natural persons for virtually all purposes of constitutional and statutory analysis.").

the Consent Decree cannot agree to extinguish § 107 claims belonging to non-parties, but can only bar actions for contribution under CERCLA § 113(f). The Consent Decree at issue in *Ford* did not bar cost-recovery CERCLA claims by its plain terms, but rather provided that -

> The Parties agree, and by entering this Consent Decree this Court finds that the United States is entitled ... *to protection from Contribution actions or claims as provided by Section 113(f)(1)* of CERCLA, 42 U.S.C. 9613(f)(1), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.

*Id.* at 700 (emphasis added).

Here, similarly, the Covered Matters include "any civil cause of action any person may claim under federal or state law *to seek contribution from Reynolds* in response to a release or threatened release of hazardous substances...." (Consent Dec. at 7.) Further, the Consent Decree provides:

> The entry of this Consent Decree shall constitute a judicially approved settlement which resolves Reynolds' liability as to Covered Matters pursuant to A.R.S. § 49–292 and Section 113 of CERCLA, 42 U.S.C. § 9613.... Reynolds' right to contribution protection under this Section shall apply and be enforceable against all other persons and entities regardless of whether such persons and entities are parties to this Consent Decree or parties in this action. In particular, contribution protection under this Section shall be effective against any and all persons not parties to this Consent Decree and against both current and any future parties to this action or any subsequent proceeding regarding the Site.

(Consent Dec. at 20.)

Based on the foregoing, it is clear that the plain language of the terms of the Consent Decree did *not* apply to bar claims from any other non-party persons for cost-recovery under § 107.

As discussed in *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007), §§ 107 and 113 provide two "clearly distinct remedies." "CERCLA provide[s] for a *right to cost recovery* in certain circumstances, § 107(a), and *separate rights to contribution* in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id.* (citing *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157, 163, n. 3, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004)). Thus, "[a] private party may recover under § 107(a) without any establishment of liability to a third party," and § 107(a) permits recovery of only the costs incurred in cleaning up a site. *Id.* at 139, 127 S.Ct. 2331. On the other hand, "contribution" is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *Id.* at 138, 127 S.Ct. 2331 (citing Black's Law Dictionary 353 (8th ed.2004)).

When considering this in light of the Consent Decree it makes clear the purpose of the protection offered by the Consent Decree: the Consent Decree was not meant to bar future § 107(a) cost-recovery claims by private parties who were not parties to the Consent Decree, but rather was meant to shield Reynolds from liability for contribution, having already paid its share to the State. This is evident when considering the "Contribution Protection" provision, which explicitly states that "Reynolds' right to contribution protection ... shall apply and be enforceable against *all other persons and entities regardless of whether such persons or entities are par-*

*ties to this Consent Decree* or parties in this action." (Consent Dec. at 20 (emphasis added).)

RID is not a party to the consent decree, nor can it be considered the "State" as that term is used in the Consent Decree. Therefore, RID is not bound by the covenant not to sue and, because RID's claim does not sound in contribution, it is not precluded by the Consent Decree.[3]

## II. *Res Judicata*

Next, Reynolds argues that RID's claims against Reynolds are barred by the doctrine of res judicata. (Dkt. # 813 at 9.)

 Res judicata applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir.2003). However, even assuming the first two elements, there is no privity between the State and RID.

Reynolds argues that RID is in privity with the State of Arizona and ADEQ because "State" as that term is used in CERCLA, includes political subdivisions. (Dkt. # 813 at 10.) As discussed above, however, RID is not the "State" for purposes of the Consent Decree simply by virtue of its status as a political subdivision.

 " 'Privity' ... is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' "

*Headwaters Inc. v. U.S. Forest Serv.,* 399 F.3d 1047, 1052–53 (9th Cir.2005). Federal courts have deemed several relationships "sufficiently close" to justify a finding of "privity." As recited by the Ninth Circuit:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. In addition, "privity" has been found where there is a "substantial identity" between the party and nonparty, where the nonparty "had a significant interest and participated in the prior action," and where the interests of the nonparty and party are "so closely aligned as to be virtually representative." Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues."

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1082 (9th Cir.2003) (quoting *In re Schimmels,* 127 F.3d 875, 881 (9th Cir.1997)). None of these circumstances apply here.

 Reynolds asserts that there is "sufficient commonality of interest" between the State's claims and RID's claims because both seek to clean the WVBA WQARF site. (Dkt. # 813 at 10.) Howev-

---

3. In its Reply, Reynolds also asserts an argument regarding the State's ability to resolve Reynolds' liability to RID. Reynolds argues that pursuant to A.R.S. § 49–292, the ADEQ may enter into a consent decree and may fully resolve that person's liability. However, § 49–292(C), in relevant part, provides: "A potentially responsible party who has resolved

its liability to the state ... is not liable for claims for contribution or cost recovery regarding matters addressed in the consent decree." However, as discussed above, the "Covered Matters" in this particular Consent Decree did not prohibit § 107 cost-recovery claims of private parties such as RID. Thus, Reynolds' argument is without merit.

er, the State sought relief in the form of a declaratory judgment to ensure performance of Remedial Actions and to reimburse the State for removal, response, and Remedial Action costs that have been incurred and will be incurred by the State in response to releases. Here, RID does not seek performance of Remedial Actions, but rather seeks cost-recovery for its expenses incurred pursuant to an Early Response Action entered into between RID and the ADEQ. *See Headwaters,* 399 F.3d at 1054 ("[P]arallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff.").

Based on the foregoing, the Court concludes that res judicata does not bar RID's claim against Reynolds.

### *CONCLUSION*

For the foregoing reasons, the Court **DENIES** Reynolds' Motion to Dismiss. (Dkt. # 813).

IT IS SO ORDERED.